**KEENE CORPORATION, Appellant,**

v.

**Jessie L. ROGERS, Jr., Eleanor Rogers, Robert L. Lofton, and Jo Emma Lofton, Appellees.**

No. 6–92–027–CV.

Court of Appeals of Texas, Texarkana.

Sept. 8, 1993.

John R. Mercy, Atchley, Russell, Waldrop, Hlavinka, Texarkana, for appellant.

Brent M. Rosenthal, Baron & Budd, P.C., Dallas, for appellees.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Keene Corporation appeals from a judgment favoring Jessie L. Rogers, Jr., Eleanor Rogers, Robert L. Lofton, and Jo Emma Lofton in two consolidated asbestos cases.

## ISSUES

In ten points of error, Keene contends (1) that the trial court and the presiding judge of the First Administrative Judicial District abused their discretion in refusing to recuse the trial judge, (2) that the trial court erred

in not including a definition of the term "exposure" in the jury charge, (3) that the trial court erred in giving the jury an improper definition of "proximate cause," (4) that the trial court erred in giving the jury an improper definition of "unreasonably dangerous," (5) that the trial court erred in admitting into evidence the testimony of one expert and the videotaped deposition of another, and (6) that the trial court erred in admitting certain reports without proper authentication.

We affirm the judgment of the trial court.

## FACTS

Jessie Rogers worked as a boilermaker and insulator helper during the 1950s, 60s, and 70s in several Alabama shipyards and industrial plants. He now suffers from asbestosis, a nonmalignant scarring of the lung caused by exposure to asbestos. Robert Lofton worked as a longshoreman in the Mobile, Alabama, shipyards from 1958 until 1989. He now suffers from mesothelioma, a fatal cancer of the lung associated with asbestos exposure. Both men sued Keene Corporation as part of a consolidated lawsuit originally involving ten plaintiffs and seven defendants. Both Rogers and Lofton alleged that their current maladies resulted from occupational exposure to asbestos products, including products made by Keene. Eleanor Rogers and Jo Emma Lofton joined the lawsuit seeking compensation for loss of consortium.

During the course of the trial, all of the defendants except for Keene settled with the plaintiffs. At trial, the plaintiffs offered proof that the hazards of asbestos had been known since the 1930s and that the hazards were knowable to Keene at the time it produced the allegedly culpable products. This proof consisted of testimonial and documentary evidence relating to the hazards of asbestos.

On September 17, 1991, the trial of this cause began. On October 1, Baron & Budd, the law firm representing Lofton and Rogers, hired Judge Joe Brown's son-in-law, Andy Waters. On October 2, Keene moved for Judge Brown to recuse himself based on this new development, and the trial court denied the motion. The trial court subsequently referred the motion to recuse to the Presiding Judge of the First Administrative Judicial District who also denied it. Keene later resurrected the motion to recuse when the appellees asked Judge Brown to grant turnover relief to aid them in collecting the judgment against Keene. Keene premised this motion on the same theory as the first, and the presiding judge overruled it as well.

The trial court entered judgment based on the jury verdict for five of the plaintiffs. Keene appeals only the judgment for the Rogerses and the Loftons. The jury awarded damages to the Rogerses and the Loftons for a combined $1.8 million. After crediting against this figure the amounts received through settlement with the other defendants, the trial court entered judgment for the appellees in the combined sum of $780,700.

## RECUSAL

■ Keene first contends that the trial judge and the presiding judge of the administrative judicial district erred in overruling the two motions for recusal. Keene takes the position that because Judge Brown's son-in-law worked as an associate for the firm representing the plaintiffs, the trial judge abused his discretion in not recusing himself and the presiding judge abused his discretion in upholding the trial judge's decision.

■ The appellees contend that both of Keene's motions to recuse were untimely under Rule 18a that requires such motions to be filed "[a]t least ten days before the date set for trial or other hearing." TEX.R.CIV.P. 18a. The ten-day requirement was placed in the rule to avoid having a party wait until the last minute to file such a motion and thus disrupt the commencement of a trial. This ten-day requirement of Rule 18a does not contemplate the situation in which a party cannot know the basis of the recusal until after a motion for recusal is no longer timely. *See Sun Exploration and Production Co. v. Jackson,* 783 S.W.2d 202, 206 (Tex.1989) (Spears, J., concurring). *See also* Sam Sparks, *Judicial Recusal: Rule 18A—Substance or Procedure,* 12 ST. MARY'S L.J. 723 (1981). An incident that occurs during trial

may take on added significance due to the very timing of its occurrence. In the present case, although Keene made its motion almost two weeks into the trial, the motion sought recusal based on a relationship between the judge and appellees' counsel, which did not exist until the day before Keene filed the motion. Although not timely filed under the rule, good cause existed for the late filing because the basis of the motion to recuse did not exist at the time the trial began.

Keene based its motion on two parts of Tex.R.Civ.P. 18b, the substantive rule on recusals. On an appeal from the denial of a recusal motion, the reviewing court may reverse the trial court's decision only if the trial court abused its discretion. Tex. R.Civ.P. 18a(f). Rule 18b(2)(a) states that "[a] judge shall recuse himself in any proceeding in which his impartiality might reasonably be questioned." Rule 18b(2)(f)(ii) requires recusal of a judge if the judge or the judge's spouse or anyone within the third degree of relationship to either of them, or the spouse of such a person "is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding." Keene contends that the fact that Baron & Budd represented the appellees on a contingency fee basis indicates that the judge's son-in-law had a substantial stake in the outcome of this case and, therefore, Judge Brown should have recused himself from the case under either rule 18b(2)(a) or rule 18b(2)(f)(ii).[1]

Judge Brown's son-in-law, however, is a salaried associate and, as such, he owns no interest in the firm and has no direct financial interest in the outcome. Several federal courts have examined the federal equivalent to Rule 18b(2) and have found that a trial judge's relationship to an employee of a law firm appearing in his court does not disqualify the judge unless the relative actually works on the case. *See* 28 U.S.C.A. § 455(a), (b)(5)(ii), (iii) (West Supp.1993); *United States ex rel. Weinberger v. Equifax, Inc.*, 557 F.2d 456 (5th Cir.1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 768, 54 L.Ed.2d 782

(1978) (judge's son was an associate in the law firm representing the defendant); *Wilmington Towing Co. v. Cape Fear Towing Co.*, 624 F.Supp. 1210, 1212 (E.D.N.C.1986) (judge's son had tentatively accepted employment with firm representing party); *Diversifoods, Inc. v. Diversifoods, Inc.*, 595 F.Supp. 133 (N.D.Ill.1984) (judge's husband worked for firm representing defendant, but he did not act as a lawyer in the pending case). *See also,* Office of Court Administration, Texas Provisions Relating To Judicial Service Judicial Retirement Judicial Conduct 148 (1990) (judge not disqualified from conducting a trial because his son is a member of a law firm which is participating in the proceeding). Keene has failed to show that Judge Brown's son-in-law worked on this case, and, in fact, this would be unlikely given that the firm did not hire him until two weeks into the trial.

The fact that a lawyer-relative of the judge is affiliated with a law firm participating in a trial does not of itself provide a reasonable basis for questioning the judge's impartiality. Each situation has to be determined on an ad hoc basis, considering such factors as whether and to what extent the lawyer-relative of the judge is participating in the case and whether the lawyer-relative will be substantially affected by the outcome of the proceeding. In the present case, there is no showing of any participation by the lawyer-relative; there is no showing that the lawyer-relative will be substantially affected by the outcome of the proceeding; and there are no other significant factors that militate toward requiring a recusal.

In summary, the record does not reflect that Judge Brown knew of anyone related to him or his spouse within the third degree of relationship who had an interest that could be substantially affected by the outcome of these cases, nor that the judge's impartiality could reasonably be questioned under these facts. We find that Judge Brown did not abuse his discretion in refusing to recuse himself under either Rule 18b(2)(a) or Rule

---

1. Keene also alleges that Judge Brown engaged in ex parte communications with the appellees' counsel during the trial, thus demonstrating a lack of impartiality. Keene does not cite to any part of the record, and we have found none, indicating that such contact occurred. Since Keene's allegations are not supported by the record, we shall not consider them on appeal.

18b(2)(f)(ii), and that the presiding judge, who heard the motions, did not abuse his discretion in denying the recusal motions. We therefore overrule this point of error.

### EXPOSURE

Keene next contends that the trial court erred in refusing to define the word "exposure" as used in the charge and, specifically, in not utilizing the definition tendered by Keene. Trial courts have considerable discretion in submitting explanatory instructions and definitions to the jury. *Fibreboard Corp. v. Pool,* 813 S.W.2d 658, 670 (Tex.App.–Texarkana 1991, writ denied). The failure of a party requesting an instruction to tender it in substantially correct form bars appellate review. *Placencio v. Allied Industrial International,* 724 S.W.2d 20 (Tex.1987). Furthermore, a trial court should not submit unnecessary instructions, even if the instructions correctly state the law. *Louisiana and Arkansas Ry. Co. v. Blakely,* 773 S.W.2d 595, 599 (Tex.App.–Texarkana 1989, writ denied).

Jury Question One asks, "Did any of the Plaintiffs and/or Plaintiff's Decedents sustain an asbestos-related injury following exposure to an asbestos-containing product sold and/or marketed and/or manufactured by the Defendant?" The charge did not define the word "exposure," and the trial court rejected Keene's tendered definition which stated:

> In order for a plaintiff to prove that he was exposed to an asbestos-containing product sold, marketed, or manufactured by a Defendant, he must prove the following three things:
>
> 1. that he was exposed to a specific asbestos-containing product sold, marketed, or manufactured by a Defendant;
>
> 2. that such exposure was on a regular basis and over some extended period of time; and
>
> 3. that he was in proximity to where such product was actually being used or handled in such a fashion as to generate dust.

Proof that he worked at a job site at a time when an asbestos-containing product sold, marketed, or manufactured by a Defendant was present and being used on the job site is insufficient, in and of itself, to meet his burden of proof in this case.

Keene's point in insisting upon this definition is rooted in concepts of "frequency, regularity, and proximity." Keene argues that these concepts must be tied by the plaintiff to the kind of exposure that he or she received to the defendant's product. Citing, *Lohrmann v. Pittsburgh Corning Corp.,* 782 F.2d 1156, 1163 (4th Cir.1986). The court in *Lohrmann* stated that: "To support a reasonable inference of substantial causation from circumstantial evidence, there must be evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." *Id.* at 1162–63; *see also Slaughter v. Southern Talc Co.,* 949 F.2d 167, 171 (5th Cir.1991) (applying Texas law and adopting the *Lohrmann* standard); *but cf, Keene Corp. v. Gardner,* 837 S.W.2d 224, 227 (Tex.App.–Dallas 1992, writ denied) (refusing to adopt the *Lohrmann* standard as Texas law).

■■■ Keene admits in its brief that its tendered definition of "exposure" transforms Jury Question One into a causation question. Keene argues that the term "exposure" is synonymous with causation so that a definition of "exposure" which links it with causation is not only proper but necessary. This argument carries little weight because the charge puts the issue of causation in Jury Questions Two and Four. Question One only asks whether the plaintiffs had some exposure to defendant's asbestos products and whether the plaintiffs later contracted asbestos-related illnesses. Questions regarding the sufficiency of the exposure and proximate cause come later in the charge. We find nothing in the cases cited by Keene that suggests that a court commits error when it does not define "exposure" to include concepts of "frequency, regularity, and proximity."[2] The trial court committed no error in

---

**2.** The *Lohrmann* and *Slaughter* cases utilized the "frequency, regularity, and proximity" test to examine the legal sufficiency of the evidence concerning causation and not to define "exposure." *Lohrmann v. Pittsburgh Corning Corp.,* 782 F.2d 1156, 1163 (4th Cir.1986); *Slaughter v.*

refusing to define the term "exposure" as used in the charge. This point of error is overruled.

## PROXIMATE CAUSE

■ Keene next contends that the trial court erred in giving the jury a definition of proximate cause which omitted the foreseeability element. The appellees urged two theories of liability in the trial court, one based on negligence and the other based on strict liability. Question Two in the charge, dealing with negligence, asked, "Was the negligence, if any, of the Defendants with respect to the Plaintiff and/or Plaintiff's Decedent listed below a proximate cause of asbestos-related injury to those Plaintiffs and/or Plaintiff's Decedent?" Question Four, dealing with strict liability, asked, "Was the unreasonably dangerous condition a proximate cause of injury to any of the Plaintiffs and/or Plaintiff's Decedents listed below?" The charge defined "proximate cause" in the following way:

> "PROXIMATE CAUSE" means that cause which in the natural and probable sequence of events, and without the intervention of any new or independent cause produces the injury and without which such injury would not have occurred. There may be more than one proximate cause of an event. The negligence of two or more parties may concur and combine to proximately cause injuries. Causes concur and combine when they join together to produce a given result. If one is negligent and such negligence concurs and combines with negligence of another party or a third person who is not a party to this lawsuit and the two combine to produce injury, each negligent party is liable for the resulting injury and the negligence of each will be deemed the proximate cause of the injury.

*Southern Talc Co.*, 949 F.2d 167, 171 (5th Cir. 1991). The court in *Slaughter* specifically held that purely circumstantial evidence can support a finding of causation. *Id.* at 171–72.

**3.** The Alabama Pattern Jury Charge defines proximate cause by explaining that: "The proximate cause of an injury is that cause which in the natural and probable sequence of events, and

Keene objected to this definition and offered the following as an alternative:

> "PROXIMATE CAUSE" means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. There may be more than one proximate cause of an event. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom.

Keene contends that the trial court erred in failing to instruct the jury on foreseeability, an essential element of proximate cause.

Keene first argues that Texas substantive law should govern the resolution of this issue as opposed to Alabama law, Alabama being the state where the exposure to Keene's products occurred. Keene does not dispute that Alabama law should control the case in general but it contends that since the appellees did not prove and the trial court did not judicially notice any Alabama law on this issue, Alabama law should be presumed to be the same as Texas law. *Citing, Creavin v. Moloney*, 773 S.W.2d 698, 702 (Tex.App.– Corpus Christi 1989, writ denied).

In the *Creavin* case, the court thought it relevant that the trial court itself took no notice of Pennsylvania law on its own motion beyond the fact that the parties did not offer any proof of the law in that state. The attorneys in the present case, in response to an inquiry by the trial judge, agreed that Alabama substantive law applied to the case. At a hearing on the jury charge, the trial judge stated, "The Court has been following what the Court perceives to be the Alabama law and the Alabama submissions." The proximate cause instruction given by the court closely tracks the language of the Alabama Pattern Jury Instruction on proximate cause.[3]

without the intervention of any new or independent cause, produces the injury and without which such injury would not have occurred." A.P.J.I: Civ. § 33.00. In the present case, the first sentence of the trial court's definition of proximate cause explains that:

> " 'PROXIMATE CAUSE' means that cause which in the natural and probable sequence of

The Alabama Supreme Court approved the Alabama Pattern Jury Instructions by an order dated April 19, 1973. The Alabama Supreme Court has also expressly approved the use of the pattern proximate cause instruction used by the trial court in the present case. *General Motors Corp. v. Edwards,* 482 So.2d 1176, 1193–96 (Ala.1985). Foreseeability is not specifically mentioned in the Alabama definition of proximate cause but is implicit in the phrase "natural and probable sequence of events."

Keene asserts that the appellees should have proved what Alabama law was on the subject and because they failed to do so, the trial court should have presumed Alabama law to be the same as Texas law. Such a presumption is not mentioned under Rule 202 of the Texas Rules of Evidence, but has been set forth in Texas case law. *See Creavin v. Maloney,* 773 S.W.2d 698. The record does not reflect that either party in the present case requested the court to take judicial notice of the Alabama law. Although the trial court did not specifically state that it was taking judicial notice of Alabama law, the court in effect announced that it was applying Alabama law and specifically stated that it was using Alabama submissions in the jury charge. We find that this was sufficient notice to the parties that the court was taking judicial notice of Alabama law. When a court on its own motion seeks out the law of another state, it is not necessary for a party to provide the court with information concerning the appropriate law.

Furthermore, by failing to object to the application of Alabama law at any time in the proceeding, Keene waived any complaint about the trial court's use of Alabama law.

The trial court did not err in basing its proximate cause instruction on the Alabama pattern jury charge. We overrule this point of error.

## UNREASONABLY DANGEROUS

██ Keene next contends that the trial court erred in defining "unreasonably dangerous" and in failing to substitute Keene's tendered definition. Question Number Three in the charge asked "At the time the products were sold, and/or marketed, and/or distributed, were the asbestos-containing products manufactured by the Defendants to which the Plaintiffs and/or Plaintiff's Decedents were exposed, unreasonably dangerous?" The jury charge defined "unreasonably dangerous" as "dangerous to an extent beyond that contemplated by the ordinary consumer."[4] Keene objected to the court's definition and offered the following as a substitute:

> If a manufacturer or seller places goods on the market which are dangerous when put to their intended purpose and the manufacturer or seller knows or reasonably should know that the goods are dangerous when used in their customary manner, the manufacturer or seller is under a duty to give adequate warnings and instructions with respect to such dangerous condition. Failure to give adequate warnings and instructions under these circumstances renders the goods unreasonably dangerous.

Keene contends that the only way that the asbestos-containing products in this case could be unreasonably dangerous under a strict liability theory is if the manufacturer failed to warn of the dangerous condition. Keene requested at trial that the court hold as a matter of law that the products were "unavoidably unsafe" under RESTATEMENT (SECOND) OF TORTS § 402A cmt. k (1965). A product is considered unavoidably unsafe under comment k when it is incapable of being made safe for its ordinary and intended use, but the benefits of its use so outweigh the hazards that courts should not hold a manufacturer or seller strictly liable so long as the manufacturer or seller gives proper warnings.[5] Comment k states that such a product

---

events, and without the intervention of any new or independent cause, produces the injury and without which such injury would not have occurred."

**4.** RESTATEMENT (SECOND) OF TORTS § 402A cmt. i (1965) defines unreasonably dangerous products as those "dangerous to an extent beyond that

which would be contemplated by the ordinary consumer."

**5.** Comment k uses as an example of such products the vaccine for rabies, which itself can cause serious damage when injected, but which is the only known way to cure the deadly disease.

"is not defective, nor is it *unreasonably* dangerous." Instead, the manufacture and sale of unavoidably unsafe products is reasonable despite the risk, so long as the manufacturer or 'seller properly warns consumers.

Under Alabama law, the issue of whether a product is unavoidably unsafe is an assumption of the risk affirmative defense. *Atkins v. American Motors Corp.*, 335 So.2d 134, 143 (Ala.1976). The defendant must plead such a defense, and the defendant bears the burden of proof on the issue. In the present case, Keene pleaded assumption of the risk, but the trial court refused Keene's request to treat the asbestos products as unavoidably unsafe and instead dealt with the products as unreasonably dangerous as manufactured. Keene contends that the court erred in failing to give the unavoidably unsafe instruction because the appellees' pleadings raised the issue of failure to warn and because the federal Fifth Circuit Court of Appeals has stated that "insulation materials containing asbestos may be viewed as 'unavoidably unsafe.'" *Borel v. Fibreboard Paper Products Corp.*, 493 F.2d 1076 (5th Cir.1973), *cert. denied*, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974).

The appellees pleaded that the asbestos products were unreasonably dangerous both because of the defective condition of the products and because of a failure to warn. However, by raising the failure to warn issue in their pleadings, the appellees did not necessarily admit that the products were unavoidably unsafe, as Keene contends. The appellees' petition raises the failure to warn issue in regard to a claim of marketing defects, not in relation to any unavoidably unsafe claim. Therefore, the appellees' pleadings do not judicially admit that Keene's products should be treated as unavoidably unsafe.

Moreover, Keene puts undue emphasis on the Fifth Circuit's opinion in *Borel*, in which the court stated that "insulation materials

containing asbestos may be viewed as 'unavoidably unsafe.'" 493 F.2d at 1088. Keene reads this language as holding that asbestos-containing products are per se unavoidably unsafe under comment k. But a better interpretation of the language suggests that courts may find asbestos products to be unavoidably unsafe in individual cases. Insulation products containing asbestos are not per se unavoidably unsafe.

The trial court did not err in refusing to submit to the jury Keene's proposed definition of unreasonably dangerous. We overrule this point of error.

## EVIDENTIARY POINTS

 Keene contends that the trial court erred in admitting into evidence the expert testimony of Dr. Joseph Wagoner. Appellate courts should only reverse rulings regarding expert testimony when the trial court abuses its discretion. *Southwestern Bell Tel. Co. v. Sims*, 615 S.W.2d 858, 862 (Tex.Civ.App.–Houston [1st Dist.] 1981, no writ). Wagoner, an epidemiologist, testified that in 1969 he did a study of the medical literature regarding asbestos from which he concluded that manufacturers of asbestos-containing products should have known before 1964 that use of the product could cause illness.

 When appellees' counsel asked for Wagoner's opinion as to whether asbestos products are unreasonably dangerous, counsel for one of the defendants objected that the question called for a legal conclusion.[6] Although an expert witness may offer an opinion on a mixed question of law and fact, the expert must be provided with the proper legal concepts to analyze the facts. *Birchfield v. Texarkana Memorial Hospital*, 747 S.W.2d 361, 365 (Tex.1987). The defendant's objection was erroneous because it failed to apprise the trial court of the problem with the question. Dr. Wagoner was qualified to

---

**6.** An attorney representing Owens–Corning Fiberglas Corporation actually made the objection, but the parties agreed at trial that an objection by any defendant in the case benefitted all of the defendants. Defense counsel objected to appellees' "unreasonably dangerous" question by stating:

Your Honor, I object. This calls for a legal conclusion. We now have Dr. Wagoner testifying on epidemiology, pathology, pulmonology, fiber count and warnings, doing the right thing and unreasonably dangerous products. I object to Dr. Wagoner being used as the expert for all seasons.

answer the question if the question had properly framed the issue. A proper objection would have pointed out that the appellees failed to supply Wagoner with a proper predicate on which to base his response. *See E-Z Mart Stores, Inc. v. Terry*, 794 S.W.2d 63 (Tex.App.–Texarkana 1990, writ denied). This point of error is overruled.

■ Keene next contends that the trial court erred in admitting the videotaped deposition of Dr. Thomas Mancuso because such evidence was inadmissible hearsay. The trial court's ruling should be overturned only if the trial court abused its discretion. *Otero–Miranda v. State*, 746 S.W.2d 352, 355 (Tex.App.–Amarillo 1988, writ ref'd) (interpreting an identical hearsay exception in Texas Rules of Criminal Evidence).

■ During the 1960s, Dr. Mancuso, a specialist in industrial medicine, made several reports to the Phillip Carey Manufacturing Company regarding health problems associated with using insulation products containing asbestos. In the reports, Dr. Mancuso recommended developing safety procedures to protect people working with asbestos products. In 1983, Dr. Mancuso gave a videotaped deposition in Mississippi for use in litigation unconnected with the present case. In that deposition, Dr. Mancuso asserted that Phillip Carey never implemented the safety measures that he proposed.[7] The appellees offered the deposition in the present case to demonstrate that the hazards of asbestos were generally knowable to those in the asbestos industry at the time the defendants produced the products in question. *See Fibreboard Corp. v. Pool*, 813 S.W.2d at 667, 669.

Keene objected to the deposition as hearsay. The appellees defended the deposition as admissible under the former testimony hearsay exception contained in Rule 804(b)(1) of the Texas Rules of Evidence. Rule 804(b)(1) requires (1) that the party against whom the testimony is offered, or a person with a similar interest, had an opportunity and similar motive to cross-examine the witness and (2) that the declarant is unavailable to testify in the case in which a party attempts to offer his or her testimony.

■ Under Rule 804(a), a witness is considered unavailable, among other things, when the witness cannot attend the trial due to death or illness. The party offering a statement under a hearsay exception must prove the unavailability of the declarant. *Hall v. White*, 525 S.W.2d 860, 862 (Tex. 1975). In Texas, unavailability of a witness means that the witness is dead, has become insane, is physically unable to testify, is beyond the jurisdiction of the court, or that the whereabouts of the witness is unknown and that a diligent search has been made to find the witness, or that the witness has been kept away from the trial by the adverse party. *Hall*, 525 S.W.2d at 862.

At trial, appellees' counsel stated, "We have attempted on past cases to get Dr. Thomas Mancuso to come live. And it's my understanding that the man is in his eighties and that he has refused because of health to appear live in trial before." The appellees offered nothing more to prove Mancuso's unavailability. Mere comments by an attorney are not sufficient proof of a declarant's unavailability. *Garza v. Exxon Corp.*, 604 S.W.2d 385, 386 (Tex.Civ.App.–San Antonio 1980, no writ). Even if counsel's statement had been taken as true, the fact that Mancuso has failed to attend previous trials due to ill health does not necessarily mean that his

---

7. Keene points out that appellees' counsel suggested in closing argument that, since Keene conducted business with Phillip Carey in the past, Keene either knew or should have known of the hazards of asbestos because Dr. Mancuso informed Phillip Carey of those hazards. Keene suggests that with this statement appellees' counsel implicitly led the jury to believe that, because Phillip Carey did not implement safety precautions in producing asbestos products, neither did Keene. Keene calls this a guilt-by-association type argument. This evidence was admissible to show what was generally known in the industry or could have been known by those involved in the industry. Under TEX.R.CIV.EVID. 105, Keene could have requested that this evidence be admitted for this limited purpose and asked for an instruction so that it could not be considered for any other purpose. Having failed to request this restriction, Keene cannot now complain that the evidence might have been considered for some other purpose than that for which it was introduced.

physical ailment continues and presently prevents him from attending trial.

■ The appellees, however, contend that Keene itself convinced the court to utilize a liberal standard of former testimony admissibility when it argued in favor of admitting Miles Wilson's deposition under the same hearsay exception because Wilson was unable to attend trial due to being nearly ninety years old. The appellees cite only one case for the proposition that "sauce for the goose is sauce for the gander." *Hooper v. Courtney,* 256 S.W.2d 462, 466 (Tex.Civ.App.–Amarillo 1952, no writ). We decline to follow the goose law set forth in *Hooper* because using one erroneous admission of hearsay to cancel out another defeats the purpose behind the rule on hearsay. The hearsay rule is intended to keep out statements of alleged fact, the value of which rests on the credibility of an out-of-court declarant. EDWARD W. CLEARY, MCCORMICK ON EVIDENCE § 246 (1972). A trial court cannot cure the admission of hearsay by admitting more hearsay for the opposing party. Furthermore, the appellees failed to object properly to the Wilson deposition, thus failing to preserve any error made by the trial court in admitting the deposition. Such a curative rule would make the jury's job more difficult, not easier. The trial court erred in admitting the videotaped deposition of Dr. Mancuso. We sustain this point of error.

■ Lastly, Keene contends that the trial court erred in admitting into evidence an unsigned report written by Dr. Mancuso and presented to the Phillip Carey Manufacturing Company. The report, allegedly written by Mancuso in 1963, discusses a perceived connection between exposure to asbestos and certain forms of cancer. The report also reflects a reluctance on the part of the asbestos industry to recognize the connection. The appellees offered this report as proof of what the industry knew or should have known about the hazards of asbestos in the early 1960s. *See Fibreboard Corp. v. Pool,* 813 S.W.2d at 667, 669.

Keene objected to the unsigned report on the ground that it lacked proper authentication under Rule 901 of the Texas Rules of Civil Evidence. The appellees also offered another report written by Mancuso, and the court admitted it over Keene's renewed objection. The second report discusses an apparent irrefutable association between asbestos and cancer.

■ The appellees contend that Keene did not timely object to the document's authenticity because the objection came only after the trial court admitted the exhibit into evidence. *See Atlantic Richfield Co. v. Misty Products, Inc.,* 820 S.W.2d 414, 421 (Tex.App.–Houston [14th Dist.] 1991, writ denied). When appellees offered the first document, Keene objected on the ground that since the reports were not published or distributed outside of the Phillip Carey Company, they could not be used as evidence that Keene knew or should of known of the hazards of asbestos. The trial court properly overruled this objection under *Fibreboard v. Pool,* 813 S.W.2d at 667. The trial court then admitted the documents into evidence, but Keene's counsel requested permission to add an authenticity objection. Because the trial court allowed this additional objection and considered Keene's authenticity argument, we find that Keene timely objected.

Rule 901(b)(1) allows for authentication by a witness with knowledge that the exhibit is what it purports to be. When Keene objected to the authenticity of these documents, the appellees responded as follows:

> Your Honor, I agree and will offer for record purposes the deposition of Dr. Thomas Mancuso, medical consultant for Philip Carry [sic], to prove authenticity, that that was what it purports to be. And there is a deposition of Dr. Thomas Mancuso that proves up the authenticity of this document. And I will offer, rather than the whole document, I will pick out portions just to prove up these two documents. I wish to do it this way. Would it be all right?

When the appellees attempted to introduce the second report, Keene renewed its objection, and the trial court again overruled it. Later, in the appellees rebuttal case, the trial court improperly admitted the videotaped deposition over Keene's hearsay objection.

Keene contends that Mancuso's deposition could not authenticate the report because of the inadmissibility of the deposition itself. *See Dartez v. Fibreboard Corp.,* 765 F.2d 456, 464 (5th Cir.1985) (an improperly admitted deposition cannot authenticate an exhibit; applying an identical federal rule). Keene did not make a hearsay objection to the deposition at the time it was proposed as an authentication for the documents. Our interpretation of the record, however, is that the Mancuso deposition was not offered at that time, but a representation was made to the court that it would be offered and that it would prove up the authenticity of the documents. Therefore, Keene preserved its objection of hearsay to the deposition by making it at the time the appellees actually attempted to play the video deposition for the court and jury. The trial court erred in admitting the documents into evidence. These points of error are sustained.

The question now becomes whether the errors committed by the trial court in admitting Dr. Mancuso's deposition and the two reports allegedly written by him amount to such a denial of Keene's rights as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. TEX.R.APP.P. 81(b)(1). The appellees offered this erroneously admitted evidence to demonstrate that the hazards of asbestos were knowable to the asbestos industry in the 1960s. However, the deposition and the reports were only one part of a vast profusion of documentary and testimonial evidence elicited for the same purpose. That evidence included the testimony of Dr. Wagoner, formerly an epidemiologist with the Public Health Service. In his testimony, Wagoner discussed the advancement of knowledge regarding the hazards of asbestos dating back to the late 1800s. He concluded that manufacturers of asbestos-containing products should have known before 1964 that use of the product could cause illness. Wagoner's testimony amounted to over 150 pages in the statement of facts. Appellees' counsel also emphasized Wagoner's qualifications and testimony to the jury during closing argument.

Other evidence included a series of letters and memoranda between various people involved in the asbestos industry discussing physical ailments related to asbestos. A letter dated 1935 from someone at the trade magazine "Asbestos" to an asbestos manufacturer indicates that the magazine had agreed not to publish anything regarding asbestosis at the request of a manufacturer. Another letter, also dated 1935, from an attorney representing an asbestos manufacturer, indicates that the editors of "Asbestos" should be warned to use only the North American data when the magazine did finally report on asbestosis, because the data from England and South Africa showed a greater hazard from asbestos dust than did the North American data. A letter to a director of research for an asbestos manufacturer suggests that, by using asbestos itself in attempting to make a synthetic asbestos, the manufacturer had "the ingredients for a first class hazard." A letter from a medical doctor to a manufacturer of asbestos dated 1943 indicates that all guinea pigs exposed to asbestos dust for over thirty months developed unmistakable evidence of asbestosis. The appellees introduced the testimony of Dr. Wagoner, the above detailed letters, and several more letters and memoranda to demonstrate that the hazards of exposure to asbestos were generally knowable to those in the industry in the 1960s.

The erroneous admission of evidence that is merely cumulative of properly admitted testimony is harmless. *Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex.1989). The errors committed by the trial court in admitting Dr. Mancuso's deposition and his two reports were therefore harmless, given that this evidence was merely cumulative of other evidence offered to establish industry knowledge. The erroneous admission of evidence therefore did not amount to such a denial of Keene's rights as was reasonably calculated to cause the rendition of an improper judgment. TEX.R.APP.P. 81(b)(1).

The judgment of the trial court is affirmed.

CORNELIUS, C.J., concurs in the result.

Dissenting Opinion by BLEIL, J.

## ON MOTION FOR REHEARING

BLEIL, Justice, dissenting.

Originally, I concurred with the majority's decision to affirm the trial court's judgment. Upon further consideration, I have concluded that I cannot join in the decision. Therefore, I dissent.

My disagreement with the majority's decision concerns the RECUSAL portion of the court's opinion, specifically the portion pertaining to Tex.R.Civ.P. 18b(2)(a), which provides for a judge to be recused when his impartiality might reasonably be questioned.

The judiciary must strive not only to give all parties a fair trial but also to maintain a high level of public trust and confidence. *Indemnity Ins. Co. v. McGee,* 163 Tex. 412, 356 S.W.2d 666, 668 (1962). Sometimes the judge may need to recuse himself, or be recused, even though he has no actual bias and would do his very best to weigh the scales of justice equally between contending parties. *See Marshall v. Jerrico, Inc.,* 446 U.S. 238, 243, 100 S.Ct. 1610, 1613, 64 L.Ed.2d 182 (1980). The problem is that people who have not served on the bench are often all too willing to indulge suspicions and doubts concerning the integrity of judges. *Liljeberg v. Health Serv. Acquisition Corp.,* 486 U.S. 847, 864–65, 108 S.Ct. 2194, 2204–05, 100 L.Ed.2d 855 (1988).

This court has previously affirmed the noble public policy that lies at the foundation of our recusal rules. In *CNA Ins. Co. v. Scheffey,* 828 S.W.2d 785, 792 (Tex.App.–Texarkana 1992, writ denied), we wrote that,

> Public policy demands that a judge who tries a case act with absolute impartiality. *Prendergass v. Beale,* 59 Tex. 446, 447 (1883). It further demands that a judge appear to be impartial so that no doubts or suspicions exist as to the fairness or the integrity of the court. *Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986). Judicial decisions rendered under circumstances that suggest bias, prejudice or favoritism undermine the integrity of the courts, breed skepticism and mistrust, and thwart the principles on which the judicial system is based. *Sun Exploration and Prod. Co. v. Jackson,* 783 S.W.2d 202, 206 (Tex.1989) (Spears, J., concurring).

This court today takes a further step toward recognizing the significance of maintaining the integrity of the judicial system by recognizing the existence of a good cause exception to allow the late filing of a motion to recuse in instances in which the basis for the motion arises untimely. I agree with and applaud the recognition that the law must allow a motion to recuse to be filed late when the grounds arise late or with due diligence are discovered late.

I agree with the majority that the trial judge in this case was not legally disqualified because his son-in-law took a job with a law firm that was participating in the trial. The reason for my disagreement with the majority is simple: I believe that when a judge's son-in-law is associated with a law firm which is participating in a case before that judge, then that judge's impartiality might reasonably be questioned.[8] The majority erroneously bases its resolution of this question on no showing of financial interest in the litigation and no showing of active participation in the trial. It fails to consider the appearance of partiality that might be given. It fails to see the difference between what is and what appears to be. Consequently, it fails to see that under the circumstances Judge Brown's impartiality might reasonably be questioned.

It appears to me that the majority views the issue as one concerning disqualification, not recusal. Where the majority and I part philosophically is when it says that the record shows that the judge's impartiality could not reasonably be questioned. The reasons it gives are essentially that (1) the son-in-law has no direct financial interest in the litigation's outcome, and (2) several federal courts have examined the "federal equivalent to Rule 18(b)(2)" and have found that a trial judge's relationship to an employee of a law firm appearing in the case does not require

---

8. Consideration of a hypothetical illuminates this issue: If you had a case in court, would you want the judge's son-in-law to work for the law firm handling the other side of the suit? I dare say most people, if asked, would respond in the negative. Their reasons for not wanting that situation would probably include a concern that the judge might be partial.

recusal unless the relative actually works on the case.

These reasons simply are not valid when they are closely scrutinized. The first reason, no direct financial interest, is patently not relevant to 18b(2)(a) (impartiality might reasonably be questioned) inquiries. And, we are not discussing disqualification under Texas Rule 18b(1) or recusal under 18b(2)(e), (f), (g). This reason fails.

The "federal equivalent to Rule 18b(2),"-with-supporting-federal-cases reason likewise cannot bear scrutiny. The fact is that the Texas rule covers disqualification and recusal, whereas the federal rule only covers disqualification.[9] In Texas courts a proce-

9. TEX.R.CIV.P. 18b is entitled "Grounds for Disqualification and Recusal of Judges." It provides:

(1) **Disqualification.** Judges shall disqualify themselves in all proceedings in which:

(a) they have served as a lawyer in the matter in controversy, or a lawyer with whom they previously practiced law served during such association as a lawyer concerning the matter; or

(b) they know that, individually or as a fiduciary, they have an interest in the subject matter in controversy; or

(c) either of the parties may be related to them by affinity or consanguinity within the third degree.

(2) **Recusal.** A judge shall recuse himself in any proceeding in which:

(a) his impartiality might reasonably be questioned;

(b) he has a personal bias or prejudice concerning the subject matter or a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(c) he or a lawyer with whom he previously practiced law has been a material witness concerning it;

(d) he participated as counsel, adviser or material witness in the matter in controversy, or expressed an opinion concerning the merits of it, while acting as an attorney in government service;

(e) he knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(f) he or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

(iii) is to the judge's knowledge likely to be a material witness in the proceeding.

(g) he or his spouse, or a person within the first degree of relationship to either of them, or the spouse of such a person, is acting as a lawyer in the proceeding.

(3) A judge should inform himself about his personal and fiduciary financial interests, and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household.

(4) In this rule:

(a) "proceeding" includes pretrial, trial, or other stages of litigation;

(b) the degree of relationship is calculated according to the civil law system;

(c) "fiduciary" includes such relationships as executor, administrator, trustee, and guardian;

(d) "financial interest" means ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party, except that:

(i) ownership in a mutual or common investment fund that holds securities is not a "financial interest" in such securities unless the judge participates in the management of the fund;

(ii) an office in an educational, religious, charitable, fraternal, or civic organization is not a "financial interest" in securities held by the organization;

(iii) the proprietary interest of a policyholder in a mutual insurance company, of a depositor in a mutual savings association, or a similar proprietary interest, is a "financial interest" in the organization only if the outcome of the proceeding could substantially affect the value of the interest;

(iv) ownership of government securities is a "financial interest" in the issuer only if the outcome of the proceeding could substantially affect the value of the securities;

(v) an interest as a taxpayer or utility ratepayer, or any similar interest, is not a "financial interest" unless the outcome of the proceeding could substantially affect the liability of the judge or a person related to him within the third degree more than other judges.

(5) The parties to a proceeding may waive any ground for recusal after it is fully disclosed on the record.

(6) If a judge does not discover that he is recused under subparagraphs (2)(e) or (2)(f)(iii) until after he has devoted substantial time to the matter, he is not required to recuse himself if he or the person related to him divests himself of the interest that would otherwise require recusal.

The federal counterpart—but clearly not the equivalent, 28 U.S.C.A. § 455 (West Supp.1993),

dural means is provided for airing the motion to recuse before an assigned, neutral judge. Tex.R.Civ.P. 18a. Under the federal rule, no procedural means is provided and the federal district judge simply decides whether he or she is disqualified. The federal Judiciary and Procedure Rule, 28 U.S.C.A. § 455 (West Supp.1993), does not even mention the word recusal.[10]

· is entitled "Disqualification of justice, judge, or magistrate." It provides:

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning .it;

(3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) Is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) Is acting as a lawyer in the proceeding;

(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

(iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

(c) A judge should inform himself about his personal and fiduciary financial interests, and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household.

(d) For the purposes of this section the following words or phrases shall have the meaning indicated:

(1) "proceeding" includes pretrial, trial, appellate review, or other stages of litigation;

(2) the degree of relationship is calculated according to the civil law system;

(3) "fiduciary" includes such relationships as executor, administrator, trustee, and guardian;

(4) "financial interest" means ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party, except that:

(i) Ownership in a mutual or common investment fund that holds securities is not a "financial interest" in such· securities unless the judge participates in the management of the fund;

(ii) An office in an educational, religious, charitable,. fraternal, or civic organizatiori is not a "financial interest" in securities held by the organization;

(iii) The proprietary interest of a policyholder in a mutual insurance company, of a depositor in a savings association, or a similar proprietary interest, is a "financial interest" in the organization only if the outcome of the proceeding could substantially affect the value of the interest;

(iv) Ownership of government securities is a "financial interest" in the issuer only if the outcome of the proceeding could substantially affect the value of the securities;

(e) No justice, judge, or magistrate shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b). Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification.

(f) Notwithstanding the preceding provisions of this section, if any justice, judge, magistrate, or bankruptcy judge to whom a matter has been assigned would be disqualified, after substantial judicial time has been devoted to the matter, because of the appearance or discovery, after the matter was assigned to him or her, that he or she individually or as a fiduciary, or his or her spouse or minor child residing in his or her household, has a financial interest in a party (other than an interest that could be substantially affected by the outcome), disqualification is not required if the justice, judge, magistrate, bankruptcy judge, spouse or minor child, as the case may be, divests himself or herself of the interest that provides the grounds for the disqualification.

10. Although the Texas Rules of Civil Procedure now cover recusal, recusal first came to the courts by legislative mandate. In 1977, Article 200a, section 6 of the Texas Revised Civil Statutes was amended to include a provision for the recusal of district court judges. The substance of Article 200a, section 6 is now found in Tex R.Civ.P. 18a and Tex.Gov't Code Ann. § 74.059 (Vernon 1988). See Sam Sparks, *Judicial Recusal: Rule 18a—Substance or Procedure*, 12 St. Mary's L.J. 723, 729 (1981). The federal courts have not received any such equivalent mandate.

Although the terms disqualification and recusal of judges are sometimes used interchangeably, such use is erroneous. *See* William W. Kilgarlin & Jennifer Bruch, *Disqualification and Recusal of Judges*, 17 St. Mary's L.J. 599, 601 (1986). The majority may have fallen into error by failing to recognize this distinction. In Texas, the requirements and procedures governing disqualification and recusal are separate and distinct. *Id.* Within the federal system, disqualification is governed by 28 U.S.C.A. § 455. Recusal does not appear to be governed by any written rule.

The federal counterpart to Rule 18b(2) simply is not the "equivalent" of that rule.[11] And the federal cases the majority cites fail to make its decision any sounder. In the federal cases cited by the majority, the relative's active participation in the pending litigation was a decisive factor in determining whether the judge was automatically disqualified under 28 U.S.C.A. § 455(b)(5)(ii) because a close relative was acting as a lawyer in the proceeding. *See United States ex rel. Weinberger v. Equifax, Inc.*, 557 F.2d 456, 463 (5th Cir.1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978); *Wilmington Towing Co. v. Cape Fear Towing Co.*, 624 F.Supp. 1210, 1212 (E.D.N.C. 1986); *Diversifoods, Inc. v. Diversifoods, Inc.*, 595 F.Supp. 133, 137–38 (N.D.Ill.1984). None of these cases, however, says that a reasonable question regarding the judge's impartiality can arise only if the relative actually works on the case.

During the trial of this complex litigation, the trial judge's son-in-law started work at the plaintiff's attorney's law firm. This fact might or might not cast doubt on the trial judge's impartiality. Here, as soon as this fact was learned, Keene's attorneys moved to recuse the judge, questioning his impartiality. Under the circumstances of this case and the law of this state, this court errs in holding that the judge's impartiality might *not* reasonably be questioned. Because the trial judge's impartiality was reasonably questioned, the trial judge should have been recused.

---

11. If we were a federal appellate court reviewing a federal district judge's refusal to disqualify under the federal rule and federal law, the majority's resolution of this question would be sounder.