

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-10-00221-CV

IN THE INTEREST OF S.D. AND
A.-M.S.D., CHILDREN

----------

FROM 233RD DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

In eleven issues, appellant A.M.D. (Father) appeals the trial court's order clarifying the amount of additional child support he was ordered to pay in his divorce decree. We will affirm in part and reverse and remand in part.

---

[1]*See* Tex. R. App. P. 47.4.

**Background Facts**

**The Divorce Decree**

On December 6, 2007, the trial court signed the final divorce decree in the marriage of Father and D.S. (Mother). The order stated that Father was obligated to pay Mother $647.50 per month for child support for their two children, S. D. and A.-M. S. D.,[2] beginning on September 1, 2007. The order also contained a paragraph regarding health insurance for the children which stated,

> [Father] is ORDERED to pay [Mother] the actual cost of the health insurance for each child as additional child support, with the first installment of $____ being due and payable on _____, 2007 and a like installment being due and payable on the ____ day of each month thereafter until there is a change in the actual cost of the health insurance for that child . . . . IT IS FURTHER ORDERED that payments by [Father] to [Mother] will discontinue if health insurance becomes available to [Father] at a reasonable cost and [Father] enrolls the children in the insurance plan . . . .

**Mother's Motions for Enforcement**

On April 15, 2008, Mother filed a "Motion for Enforcement of Order and Order to Appear," alleging that on August 20, 2007, the trial court signed an order which required Father to pay health insurance costs of $281.87 a month beginning on September 1, 2007. Mother claimed that Father's arrearages at the time of filing totaled $3,314.72. No August 20, 2007 order appears in the record,

___

[2]We use initials for the children and parents throughout this opinion. *See* Tex. R. App. P. 9.8(b)(2).

although there is a docket entry of that date stating that a non-jury trial was held and the divorce was granted that day.  Mother also requested that "if the Court finds that any part of the order sought to be enforced is not specific enough to be enforced by contempt, the Court enter a clarifying order more clearly specifying the duties imposed on [Father] and giving [Father] a reasonable time within which to comply."

A hearing on Mother's motion for enforcement was held.[3]  The associate judge signed an order on January 15, 2009.  In that order, the associate judge found that

> on August 20, 2008 [Father] was ordered to make periodic payments of additional child support, in an order that appears in the minutes of this court and states in relevant part as follows:
>
> . . . [Father] is ORDERED to pay [Mother] the actual cost of health insurance for each child as additional child support, with the first installment of $___ being due and payable on September 1, 2007 and a like installment being due and payable on the first day of each month thereafter . . . .

It appears that the associate judge crossed out "$287.81" and inserted the blank by hand, thus seeming to bring the quoted language more in line with the divorce decree rather than the August 20, 2007 order that Mother had sought to enforce.  Further, the associate judge's order stated that Father had been ordered to make those payments on August 20, 2008—a date after the motion for enforcement was filed.  The associate judge found that Father "admit[ted] that

---

[3]No reporter's record was taken of the hearing.

3

he failed to pay court ordered medical insurance" and found that his arrearages amounted to $3,504.00. The associate judge concluded that Father should pay $100.00 per month in addition to his current child support obligation to pay off the arrearage and an additional $75 per month for Mother's attorney's fees.

On December 15, 2009, Mother filed a second motion for enforcement, claiming that Father had failed to pay the arrearages and attorney's fees he was ordered to pay in the January 15, 2009 order. She requested in the alternative, if the court found that *any part of the order sought to be enforced* was not specific enough to be enforced by contempt, the court should clarify *that* order.

On January 25, 2010, Father filed a motion for rehearing on the first motion for enforcement. He argued, among other things, that there is no order of August 20, 2008, and that the blank amount of additional child support is "nonsensical" and "impossible." The associate judge granted Father's motion and vacated the January 15, 2009 order on Mother's first motion for enforcement. Mother objected to vacating the order and to granting the rehearing, and she requested a de novo hearing in the trial court.

**Father's Motion for Clarification**

On February 5, 2010, Father filed a motion for clarification of the child support order, requesting that the trial court specify whether the amount represented by the blank in the divorce decree is zero or some other amount. A hearing was held on the motion on March 8, 2010, before the associate judge. The associate judge found that the blanks meant that

4

> [Father] is ORDERED to pay [Mother] the actual cost of health insurance for each child as additional child support, with the first installment of $563.74 being due and payable on January 1, 2008, and a like installment being due and payable on the 1st day of each month thereafter until there is a change in the actual cost of the health insurance for that child.

Father then requested a de novo hearing on his motion to clarify.

**Father's Petition to Modify the Parent-Child Relationship**

On January 22, 2010, Father filed a petition to modify the parent-child relationship, requesting a decrease in his child support payments.[4] A hearing was held before the associate judge on March 8, 2010, and the motion was denied "due to [Father's] failure to prove any change in income since [the] date of divorce."

---

[4]Mother had also filed a motion to modify the parent-child relationship, requesting an increase in Father's child support payments, which she nonsuited at the March 8, 2010 hearing. The Attorney General had also filed suit to modify the child support order on June 13, 2008, requesting that the trial court modify the divorce decree to provide for health care coverage. The Attorney General also nonsuited its claim.

**The Rehearing on Father's Motions[5]**

On April 22, 2010, a hearing was held on Father's motion for clarification and his motion to modify before the trial court. At the hearing, Mother testified that she pays $563.74 for the children's medical insurance and that she has paid that amount from January 1, 2008 "through the end of 2009." Father testified that the child support was higher than the guidelines and that he could not pay it. He also testified that he was working the same job and was living in the same place that he had lived at the time of the divorce.

---

[5]The parties appear to believe that on April 22, 2010, the trial court held a de novo hearing on Mother's motion for enforcement, and the trial court's order states that it granted Mother's "Motion for Clarification." However, Mother did not file a motion for clarification, and none of her motions for enforcement (in which she requested clarification as alternative relief) were before the court on April 22nd.

In Mother's original motion for enforcement, filed April 15, 2008, she attempted to enforce an order she alleged was entered on August 20, 2007, which is not contained in the record presented for our review, and appears to be an oral order. She asked that if the August 20, 2007 order cannot be enforced, it should be clarified. In her second motion for enforcement, filed December 15, 2009, she asked to enforce the January 15, 2009 order, which was later vacated on February 1, 2010. Once again, she requested in her second motion for enforcement that if the January 15, 2009 order could not be enforced, it should be clarified. Yet neither of those orders is the subject of the trial court's order of April 22, 2010. The clerk's record reflects that Father moved for a rehearing on Mother's first motion for enforcement, which was granted. Mother then objected to vacating the order and to granting the rehearing and she requested a de novo hearing in the trial court. Thus, if any of Mother's motions were heard on April 22nd, it would have been her motion for a de novo hearing on Father's motion for rehearing, not either of her motions for enforcement.

6

After the hearing, the trial court ordered Father

> to pay [Mother] the actual cost of the health insurance for each child as additional child support, with the first installment of $563.74 being due and payable on January 1, 2008 and a like installment being due and payable on the 1st day of each month thereafter until there is a change in the actual cost of the health insurance for that child . . . .  IT IS FURTHER ORDERED that payments by [Father] to [Mother] will discontinue if health insurance becomes available to [Father] at a reasonable cost and [Father] enrolls the children in the insurance plan . . . .

The order also awarded Mother's attorney $1,800 in attorney's fees.[6]  The trial court also denied Father's motion to modify the child support order.  Father filed a request for findings of fact and conclusions of law, a "request for findings in child support order," and a notice of past due findings.

**Father's Motion to Recuse**

On July 20, 2010, Father filed a motion to recuse the trial judge, alleging that Judge Harris has a personal bias or prejudice against Father's attorney, Bryan Walter.  Specifically, he stated that there is an investigation regarding Judge Harris in which Walter is a material witness.  Judge Harris refused to recuse himself, a hearing on the motion was held before another judge, and the motion was denied.  This appeal followed.

---

[6]On June 15, 2010, the trial court granted a motion for judgment nunc pro tunc filed by Mother to change the date of the order, which was incorrect on the first order.

**Discussion**

**The Motion for Clarification**

In his first issue, Father argues that the trial court erred by exceeding the bounds of clarification to impose a substantive modification of the child support order. As we noted above, the trial court's order grants Mother's "Motion for Clarification," which does not exist. We also noted above that Mother's motions for enforcement were not before the court on April 22, 2010. It thus appears to be Father's motion for clarification that was granted. However, because the parties do not address this error in their briefing, we will evaluate whether either party met the burden of proving a requested clarification.

The family code provides, "A court may clarify an order rendered by the court in a proceeding under this title if the court finds, on the motion of a party or on the court's own motion, that the order is not specific enough to be enforced by contempt." Tex. Fam. Code Ann. § 157.421 (West 2008). However, the code prohibits a court from substantively changing the provisions of an earlier order with a clarification order. *Id.* § 157.423 (West 2008). A substantive change occurs when judicial reasoning and determination is used to correct an error. *Dickens v. Willis*, 957 S.W.2d 657, 659 (Tex. App.—Austin 1997, no pet.). A clerical error is one that results from an inaccurate recording of the court's decision. *Id.* Whether an error is clerical or judicial is a question of law. *Id.* However, before the trial court addresses this question, it must first make the factual determination of "whether it previously rendered judgment and the

8

judgment's contents." *Id*. (citing *Escobar v. Escobar*, 711 S.W.2d 230, 232 (Tex. 1986)). This court reviews the trial court's factual determination for legal and factual sufficiency. *Id*. Proof of a clerical error must be "clear, satisfying, and convincing." *Id*.

In this case, the original child support order required Father to pay "the actual cost of the health insurance for each child." The order did not specify what that amount was. The blanks therefore created an ambiguity of the type that may be clarified. *See* Tex. Fam. Code Ann. § 157.421. If there had been evidence at the final divorce hearing on August 20, 2007, that may have resulted in an order, Mother produced no evidence at the April 22, 2010 hearing to support that contention.[7] Mother testified as to what she has paid for medical insurance for the children, but she made no attempt to prove that she had previously presented that evidence or that the trial court had previously rendered judgment that Father pay that amount. See *Dickens*, 957 S.W.2d at 659 (requiring the trial court to determine whether it had previously rendered judgment and the contents of that judgment). Nor does the record reveal what, if any, amount of medical support was originally ordered, whether it was $563.74 as Mother claimed at the April 22, 2010 hearing, $281.87 as she claimed in her first motion for enforcement, or

---

[7]The only evidence in the record to support the $563.74 amount was that which was presented at the April 22, 2010 hearing. This is no proof of a clerical error that was allegedly made almost three years before. In fact, the installment amount Mother sought in her original motion for enforcement was $281.87, which is what she claimed was ordered on August 20, 2007.

9

some other amount. *See Jenkins v. Jenkins*, 16 S.W.3d 473, 482 (Tex. App.—El Paso 2000, no pet.) (looking to the record to determine intended contents of judgment); *Dickens*, 957 S.W.2d at 659–60 (same).

Likewise, Father presented no evidence to support his contention that the trial court had determined that the actual cost of health care was zero dollars. Thus, there was no proof that any of the proffered "clarified" amounts were left out of the divorce decree merely by clerical error. It was the moving party's burden to demonstrate the contents of the trial court's previous judgment. *See In re Marriage of Ward*, 137 S.W.3d 910, 914–15 (Tex. App.—Texarkana 2004, no pet.) (noting that the party seeking to establish the existence of a clerical error "bears a heavy burden"). It does not matter for purposes of our analysis now whose motion was heard on April 22, 2010, because both parties failed to meet that burden.

In order to fill the blanks, the trial court must have used judicial reasoning and determination, and its clarification order therefore substantively changed the provisions of the original child support order. *See* Tex. Fam. Code Ann. § 157.423; *Dickens*, 957 S.W.2d at 659 (noting that a substantive change occurs when judicial reasoning and determination is used). It is therefore unenforceable. S*ee In re Naguib*, No. 05-04-01010-CV, 2004 WL 2335029, at *3 (Tex. App.—Dallas Oct. 18, 2004, orig. proceeding [mand. denied]) (mem. op.) (holding that the trial court's order clarifying a divorce decree made a substantive change to the decree and was therefore unenforceable). We sustain Father's

10

first issue. Because we sustain this issue, we do not need to reach Father's second through eighth points. *See* Tex. R. App. P. 47.1.

**Modification of the child support order**

In his ninth issue, Father argues that the trial court abused its discretion by refusing to decrease the amount of child support he had been ordered to pay.

We review a decision to modify a child support order for an abuse of discretion. *In re B.S.H.*, 308 S.W.3d 76, 78 (Tex. App.—Fort Worth 2009, no pet.). A trial court may modify a child support order if the circumstances of the child or a person affected by the order have materially and substantially changed since the order was rendered. Tex. Fam. Code Ann. § 156.401(a)(1) (West 2008). The party seeking to modify a child support order has the burden to prove a material and substantial change in circumstances since the entry of the previous order. *In re C.C.J.,* 244 S.W.3d 911, 918 (Tex. App.—Dallas 2008, no pet.); *In re Z.B.P.,* 109 S.W.3d 772, 781 (Tex. App.—Fort Worth 2003, no pet.). In determining whether there has been a material and substantial change in circumstances, it is well-settled that the trial court must examine and compare the circumstances of the parents and any minor children at the time of the initial order with the circumstances existing at the time modification is sought. *C.C.J.*, 244 S.W.3d at 917. The record must contain both historical and current evidence of the relevant person's financial circumstances. *Id*. Compliance with the statutory guidelines is discretionary when a trial court is considering whether to modify an existing child support order. Tex. Fam. Code Ann. § 156.402 (West

2008); *In re G.J.S.,* 940 S.W.2d 289, 294 (Tex. App.—San Antonio 1997, no writ). A child support order that is not in compliance with the guidelines does not by itself establish a material and substantial change in circumstances. *G.J.S.,* 940 S.W.2d at 294.

Father testified that the child support was set higher than the guidelines and that he could not pay it. He also testified that he was working the same job and was living in the same place as he had at the time of the divorce. Father admitted that he had not been able to keep the children for his full weekend visitation because he did not have a place for them to stay. He would stay with the children at a hotel and pay his bill with credit cards. Father further testified that he had been living rent-free but had been informed that he would have to move at the end of the month.

Father's testimony only provided evidence that his circumstances would likely change in the future, not that any change in circumstances had already occurred. As stated above, it was Father's burden to prove that his circumstances were changed at the time he sought the modification. *C.C.J.*, 244 S.W.3d at 917; *Z.B.P.*, 109 S.W.3d at 781. It was not enough that Father testified that the child support order is not in compliance with the guidelines. *See G.J.S.,* 940 S.W.2d at 294. Further, he provided no evidence of what his rent would be once he did move or any other evidence of his future living arrangements. Because he did not meet his burden, we hold that the trial court

12

did not abuse its discretion in denying Father's motion for modification. We overrule Father's ninth issue.

**The Code of Judicial Conduct**

In his tenth issue, Father argues that the trial judge breached canons of the code of judicial conduct. Under our constitution, the State Commission on Judicial Conduct is charged with enforcement of the Code of Judicial Conduct. Tex. Const. art. V, § 1–a(6); *see also Joachim v. Chambers*, 815 S.W.2d 234, 243 (Tex. 1991); *Howell v. Hecht*, 821 S.W.2d 627, 632 (Tex. App.—Dallas 1991, writ denied) ("[W]e find that the only remedy or sanction that is afforded by the Code states: 'Any judge who violates this Code shall be subject to sanctions by the State Commission on Judicial Conduct.'"). We are therefore without jurisdiction to address any alleged breach of the code of judicial conduct. *Cf. Merritt v. Davis*, 331 S.W.3d 857, 863 (Tex. App.—Dallas 2011, pet. denied) (finding no authority to support the proposition that a violation of the code of judicial conduct amounts to reversible error). We overrule Father's tenth issue.

**Recusal**

Mother first argues that Father's motion for recusal was untimely because the rules of civil procedure require a motion for recusal to be filed "[a]t least ten days before the date set for trial." *See* Tex. R. Civ. P. 18a(a). However, the ten-day requirement does not apply when the moving party did not know of the possible grounds for recusal until a motion is no longer timely. *See Keene Corp. v. Rogers*, 863 S.W.2d 168, 171 (Tex. App.—Texarkana 1993, no writ). The

investigation regarding Judge Harris did not begin until after March 2010, well after trial.

Father claimed that because Walter was a material witness in the investigation, Judge Harris's impartiality might reasonably be questioned and that Judge Harris has a personal bias or prejudice against Walter. *See* Tex. R. Civ. P. 18b(2)(a), (b). We review the denial of a motion to recuse under an abuse of discretion standard. *See* Tex. R. Civ. P. 18a(f).

At the hearing before presiding administrative Judge Walker, Walter testified that he attended a hearing in front of Associate Judge Lisa Beebe, at which he presented her a form order. The order was denied, but the form order was not returned. Walter testified he believes the order was accidentally left in Judge Beebe's file and was inadvertently signed by Judge Harris the next day with the rest of that day's orders. Walter's opposing counsel in that case filed a motion for sanctions against Walter. At the hearing on the motion for sanctions, Judge Harris testified that Walter had presented the order to him and represented that the order had been granted. Walter claims the testimony is false, and that there are ongoing investigations for perjury. He testified that he had evidence that he was not in the court building that day, including TollTag deductions and surveillance camera tape of the court's entrances, but he did not present any of it to the court. Judge Walker denied Walter's motion to recuse because he found that Walter did not meet his burden of showing partiality or personal bias or prejudice. Specifically, Judge Walker stated,

14

At this point I can't tell who's telling the truth. I have you saying one thing but also telling me the judge said something else. The fact that you say you're right doesn't mean you're right; you're an interested party. I asked you about other people who could substantiate your allegations, any other evidence you may have. I'm still faced with the same thing: a factual dispute that is unresolved. And the law doesn't require me to rule in favor of you and against the judge where that exists.

Judge Walker was not required to believe Walter's testimony simply because there were no other witnesses to contradict it. *See Hector v. Thaler*, 927 S.W.2d 95, 99 (Tex. App.—Houston [1st Dist.] 1996, no pet.) (holding that the judge did not abuse his discretion in denying appellants' motion to recuse because the judge was free to not believe the appellants' testimony). We hold that Judge Walker did not abuse his discretion in denying Father's motion for recusal. We overrule Father's eleventh issue.

## Conclusion

Having sustained Father's first issue, overruling Father's ninth, tenth, and eleventh issues, and having not reached Father's remaining issues, we affirm the trial court's judgment as to Father's motion for modification and motion to recuse. We reverse the trial court's judgment as to the clarification order and remand the case for further proceedings consistent with this opinion.

LEE GABRIEL
JUSTICE

PANEL: DAUPHINOT, GARDNER, and GABRIEL, JJ.

DELIVERED: August 31, 2011

15