KEENE CORPORATION, Appellant,

v.

James GARDNER, Beverly Gardner, Bobby Sykes, Barbara Sykes, Daniel Walding, Betty Walding, Robert Derryberry, and Iva Derryberry, Appellees.

No. 05–91–00817–CV.

Court of Appeals of Texas, Dallas.

July 31, 1992.

Rehearing Denied Sept. 4, 1992.

John R. Mercy, Ned A. Stewart, Texarkana, for appellant.

Janice Robinson, Dallas, for appellees.

Before STEWART, OVARD and MALONEY, JJ.

## OPINION

MALONEY, Justice.

This is an asbestos case. Keene Corporation appeals from a judgment for James Gardner, Bobby Sykes, Daniel Walding, and Robert Derryberry[1] (appellees). Appellees sued Keene for strict products liability. In eight points of error, Keene contends: there is no evidence to show Derryberry was exposed to MonoBlock[2]; the jury's answers did not establish an essential liability element; and the trial court abused its discretion by coercing a verdict. It also contends that the trial court erred in: not granting judgment *non obstante veredicto* because the jury's answers did not establish an essential liability element; not allowing Keene to impeach an expert witness; awarding prejudgment interest to the plaintiffs; ordering mediation; and imposing sanctions on Keene for violating the mediation order.

We sustain points of error seven and eight. We vacate the trial court's order imposing sanctions. In all other respects, we affirm the trial court's judgment.

## STATEMENT OF FACTS

Appellees sued Keene and others for injuries caused by their exposure to asbestos-containing products manufactured by Keene and the others. All appellees are citizens of Alabama. All exposures occurred in Alabama.

The trial court combined two suits for trial.[3] All defendants were either asbestos manufacturers or their successors in interest. After trial began, the court ordered all parties to mediation. Keene moved to set aside the order for mediation. It also asked for ten days to file written objections. The court denied its motion. Keene's representative attended, but did not participate, in the mediation. The mediator later excused Keene from further attendance at the proceedings. Appellees filed a motion seeking sanctions against Keene for its non-compliance with the court's mediation order. After a hearing on appellees' motion, the court ordered Keene to pay all mediation costs.

The trial continued. During its deliberations, the jury sent four notes to the trial judge. The jury awarded appellees $816,600 in damages plus prejudgment interest.

## DERRYBERRY'S EXPOSURE TO KEENE'S PRODUCT

In its first point of error, Keene contends there was no evidence to support the jury's finding that Robert Derryberry was exposed to MonoBlock, a Keene product.

---

1. Appellees' spouses, Beverly Gardner, Barbara Sykes, Betty Walding, and Iva Derryberry, claimed loss of consortium as well as other derivative claims. Appellant does not complain of the jury's failure to award damages to the spouses.

2. Keene's predecessor in interest manufactured MonoBlock, an insulation product that contained asbestos.

3. The petition in Cause Number 89–10326 listed twelve plaintiffs and fifteen defendants. The petition in Cause Number 89–10242 listed nine plaintiffs and the same fifteen defendants.

## Standard of Review

■ When an appellant raises a "no evidence" point of error, we consider only the evidence and inferences that support the finding and disregard all evidence and inferences to the contrary. *Jacobs v. Danny Darby Real Estate, Inc.,* 750 S.W.2d 174, 175 (Tex.1988). We sustain a "no evidence" point only when the record shows one or more of the following:

(1) a complete absence of a vital fact,

(2) the rules of law or evidence bar the only evidence offered to prove the vital fact,

(3) the evidence offered to prove a vital fact is no more than a mere scintilla, or

(4) the evidence conclusively shows the opposite of the vital fact.

*Anderson v. City of Seven Points,* 806 S.W.2d 791, 795 n. 3 (Tex.1991); *C & C Partners v. Sun Exploration & Prod. Co.,* 783 S.W.2d 707, 716 (Tex.App.—Dallas 1989, writ denied). Evidence so weak that it creates no more than a mere surmise or suspicion of its existence is no more than a mere scintilla. *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983).

## Applicable Law

■ Unless a party requests the court to take judicial notice of or introduces proof of another state's law, or the court, on its own motion, takes judicial notice of another state's law, we presume the other state's law is the same as Texas law. *Ogletree v. Crates,* 363 S.W.2d 431, 435 (Tex.1963); *see Creavin v. Moloney,* 773 S.W.2d 698, 702 (Tex.App.—Corpus Christi 1989, writ denied). In a products liability case, a plaintiff must prove that the defendants supplied the product that caused the injury. *Gaulding v. Celotex Corp.,* 772 S.W.2d 66, 68 (Tex.1989).

## Application of Law

■ Keene urges this Court to adopt the frequency, regularity, and proximity test for causation from *Lohrmann v. Pittsburgh Corning Corp.,* 782 F.2d 1156, 1162 (4th Cir.1986). The Fifth Circuit, in applying Texas law, adopted the *Lohrmann* test as the minimum showing of producing cause required in asbestos cases. *Slaughter v. Southern Talc Co.,* 949 F.2d 167, 171 (5th Cir.1991).

*Lohrmann* requires proof of frequent and regular work in proximity to a specific item of the defendant's asbestos-containing product. A plaintiff must prove that, more probably than not, he actually breathed asbestos fibers from the defendant's product. It is sufficient for a plaintiff to show he frequently and regularly worked in proximity to a defendant's products, so that it is likely that the plaintiff inhaled the defendant's asbestos fibers. *Slaughter,* 949 F.2d at 171.

The record below does not show that the court took judicial notice of, or that either party introduced proof of, Alabama law. We presume Alabama law to be the same as Texas law. We find no case, and appellant cites us to none, in which a Texas state court applies the *Lohrmann* standard. We decline to adopt the *Lohrmann* standard. However, we find that appellees did produce some evidence that would satisfy the frequency, regularity, and proximity test.

Robert Derryberry worked for Associated Contractors at the Childersburg, Alabama powder plant in 1955, 1956, and 1957. He worked, among other places, in the powerhouse of the plant in each of those years. Asbestos products were used in various areas of the plant, including the powerhouse. Derryberry claimed that he was exposed to asbestos insulation products on the job site. Although he did not know which products were used in the powerhouse, a co-worker, Artie Epperson, "had some responsibility for knowledge of the products that were used."

Epperson testified by deposition. He was present "often," "a lot of times," when workers were cutting or using MonoBlock in the powerhouse at the Childersburg powder plant.

Derryberry worked at the powder plant for three consecutive years. At some point during each of those years, he worked in the powerhouse. He worked there when Epperson worked there. A jury could have found that this showed frequent and regular work in proximity to MonoBlock. It

could have found this proximity was likely to result in Derryberry's inhaling asbestos fibers from Keene's product. Some evidence existed that, more probably than not, Derryberry actually breathed asbestos fibers from MonoBlock.

We overrule Keene's first point of error.

## JURY ANSWERS ON FAILURE TO WARN

In point of error number two, Keene argues that the jury's answer to question number four does not establish an essential element of Keene's liability. In point of error number three, Keene contends that, because the jury did not find the essential liability element, the trial court should have granted its motion for judgment notwithstanding the verdict. Keene maintains that appellees alleged and the trial court submitted a jury issue on only one theory of strict products liability—failure to warn of dangers in an unavoidably unsafe product. Keene argues that the jury did not find that the "failure to warn" was a proximate cause of appellees' injuries.

### Applicable Law

■ Texas law recognizes at least three distinct theories of strict products liability, products that are unreasonably dangerous: in construction (manufacturing defect), as designed (design defect), and due to inadequate warnings (marketing defect). *See Lucas v. Texas Indus., Inc.,* 696 S.W.2d 372, 377 (Tex.1985) (op. on mot. for reh'g); 59 Tex.Jur.3d *Products Liability* § 22, at 540 (1988). In cases alleging design defect, the fact finder must consider the product's utility and the risk involved in its use. *Turner v. General Motors Corp.,* 584 S.W.2d 844, 847 & n. 1 (Tex.1979); *see Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d 743, 745–46 (Tex.1980).

■ A manufacturer may be liable for a marketing defect by failing to warn of dangers in an "unavoidably unsafe" product. *See Borel v. Fibreboard Paper Prods. Corp.,* 493 F.2d 1076, 1088–89 (5th Cir. 1973) (applying Texas law), *cert. denied,* 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974); Restatement (Second) of Torts § 402A & cmt. k (1965). An "unavoidably unsafe" product is a dangerous product that is also beneficial. *Borel,* 493 F.2d at 1088–89. Under this theory, the manufacturer is strictly liable only if the failure to warn is a producing or proximate cause of the plaintiffs' injuries. *See Magro v. Ragsdale Bros., Inc.,* 721 S.W.2d 832, 834 (Tex. 1986); *Lucas,* 696 S.W.2d at 377; *Ford Motor Co. v. Durrill,* 714 S.W.2d 329, 337 (Tex.App.—Corpus Christi 1986), *vacated and remanded for rendition of agreed judgment,* 754 S.W.2d 646 (Tex.1988).

### Application of Law

■ Appellees pleaded two theories of strict liability. Their petitions alleged that Keene's asbestos-containing products were defective, unsafe, and not reasonably fit for their intended purposes, rendering them unreasonably dangerous. These are design defect claims. Appellees presented evidence to support their design defect theory. The trial court charged the jury on design defect. The jury found for appellees on the design defect theory.

We overrule the second and third points of error.

## JURY COERCION

In its fourth point of error, Keene complains that the trial court abused its discretion by coercing a verdict. Keene argues that when the jury deadlocked, the trial court should not have repeatedly instructed the jury. Keene does not argue that the instructions themselves were improper, only that the court's repeated instructions coerced at least four jurors into changing their opinions.

Appellees contend that the court only instructed the jurors twice. Each instruction followed the jury's notes that they were evenly split on questions three and five. Appellees argue that because the jurors were evenly split, the court's instructions could not have coerced the minority jurors to change their votes.

### Applicable Law

■ An appellant has the burden to present a sufficient record to show revers-

ible error. TEX.R.APP.P. 50(d). We require an appellant to identify the places in the record that support its complaint. *Barham v. Turner Constr. Co.*, 803 S.W.2d 731, 740 (Tex.App.—Dallas 1990, writ denied). We are not required to search the record to determine if appellant's contentions are valid. *Kropp v. Prather*, 526 S.W.2d 283, 288 (Tex.Civ.App.—Tyler 1975, writ ref'd n.r.e.).

### Application of Law

Nowhere in Keene's citations to the statement of facts do we find where the jury actually received supplementary instructions from the court. Although not required to do so, we searched both the statement of facts and the transcript for the court's answers and their delivery to the jury. We were unable to find any record of the jury's receiving any additional instructions.

The jury began deliberations at 12:30 p.m. on Friday, March 1. The trial court excused them for the weekend. The jury returned Monday morning, March 4. Early Monday morning, the jury sent out a note [4] saying they "were having problems with Question Number 3." Nothing in the record shows the court answered this note.

About 2:00 or 2:10 Monday afternoon, the jury sent out a second note. It said that they were "locked on Question Number 3. Six votes and six votes. And Question Number 5, five votes and seven votes. We cannot go any further." The trial court and the attorneys extensively discussed the length of trial, the length of the jury charge, the time spent in deliberation, and the proposed contents of the answer. Nothing in the record shows the trial court sent the jury any supplementary instructions.

The court received an additional note on Tuesday, March 5 at 11:25 a.m. in which the jury said they were deadlocked and had made no progress since the Friday before. The court and the attorneys discussed sending the jury a "dynamite charge." Next appears the court reporter's notation "([w]hereupon the [j]ury continued to deliberate)." The jury then notified the court it had broken the deadlock and requested a day off. The court released the jury and told them to return on Thursday.

Thursday morning the court prepared an "Allen" [5] charge. Appellant's attorney referred to a fourth jury note that said "they were stuck nine to one on questions [n]umber 9, 10, and 11" [6] and requested dismissal. The court took objections to the "Allen" charge and told the bailiff to deliver it to the jury before lunch. When the bailiff took the "Allen" charge to the jury, they announced that they had a verdict. The jury never saw the court's supplemental charge.

 Keene has not brought this Court a record showing that the court ever delivered an additional charge to the jury. If any error existed, Keene has waived its right to complain by not including in the record evidence that the jury received any additional instructions.

We overrule the fourth point of error.

## CREDIBILITY OF EXPERT WITNESS

In its fifth point of error, Keene complains that the trial court erred in not allowing Keene to impeach Dr. Joseph K. Wagoner, appellees' expert witness. Dr. Wagoner, an epidemiologist, testified on the knowledge and awareness of asbestos-related disease before Keene's predecessor placed warnings on its asbestos-containing products. Keene complains because the court would not allow it to challenge Dr. Wagoner's testimony with expert criticism of his beryllium research.

---

4. The transcript contains no jury notes or answers. All references to jury communications come from a reading of the statement of facts.

5. *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1892). In *Allen,* a criminal case, the Supreme Court approved a charge that instructed the minority members of a deadlocked jury to reconsider their positions. 164 U.S. at 500, 17 S.Ct. at 157.

6. Nothing in the record explains why the note only reflects ten votes.

**230**

## Applicable Law

■■■■ The scope and extent of cross-examination is largely within the trial court's discretion. *Austin Road Co. v. Ferris,* 492 S.W.2d 64, 74 (Tex.Civ.App.—Fort Worth 1973, writ ref'd n.r.e.). A party has wide latitude in cross-examining an adverse witness to show interest, bias, or prejudice. *Merrifield v. Seyferth,* 408 S.W.2d 558, 560 (Tex.Civ.App.—Dallas 1966, no writ).

■■■■ A party's right to cross-examination is limited to relevant matters. *Id.; Mena v. Byers,* 237 S.W. 330, 331 (Tex.Civ.App.—El Paso 1922, no writ). Evidence is relevant and material only if it tends to prove or disprove any fact in issue. *Nixon Constr. Co. v. Rosales,* 437 S.W.2d 52, 53 (Tex.Civ.App.—El Paso 1969, writ ref'd n.r.e.); *see* TEX.R.CIV.EVID. 401.

■■■■ A party cannot impeach a witness on collateral or immaterial matters. *Christie v. Brewer,* 374 S.W.2d 908, 914 (Tex.Civ.App.—Austin 1964, writ ref'd n.r.e.). Neither can a party cross-examine a witness on immaterial matters to establish a basis for impeachment. *Leyendecker v. Strange,* 204 S.W.2d 845, 848 (Tex.Civ.App.—Galveston 1947, writ ref'd n.r.e.). Matters are not collateral if they are relevant for purposes other than impeachment. *French v. Brodsky,* 521 S.W.2d 670, 674 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.); *see Bierschwale v. Oakes,* 497 S.W.2d 506, 518 (Tex.Civ.App.—Houston [1st Dist.] 1973), *rev'd on other grounds,* 516 S.W.2d 125 (Tex.1974); *Hanover Ins. Co. v. Johnson,* 397 S.W.2d 904, 906 (Tex.Civ.App.—Waco 1965, writ ref'd n.r.e.); 3A JOHN H. WIGMORE, EVIDENCE § 1003 (Chadbourn rev. 1970). A party may contradict a witness on a collateral matter if the matter, while not relevant in itself, is *directly* relevant to the subject of his testimony. *See French,* 521 S.W.2d at 674–75.

The rules of evidence do not abrogate these common law principles, nor do the rules expressly include them. We use rules 401 through 403 in applying these relevancy principles. 33 STEVEN GOODE ET AL., GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 607.3, at 407–08 (Texas Practice 1988); *see* TEX.R.CIV.EVID. 401–403.

## Application of Law

■ Dr. Wagoner's research on beryllium was unrelated to his asbestos testimony. Criticism of his beryllium research did not tend to prove or disprove any fact in issue, apart from its impeachment value. It was irrelevant and collateral, and subject to exclusion at the trial court's discretion. *See Mason v. Texaco, Inc.,* 948 F.2d 1546, 1556 (10th Cir.1991) (rejecting the same argument that Keene makes here), *cert. denied,* —— U.S. ——, 112 S.Ct. 1941, 118 L.Ed.2d 547 (1992).

We overrule point of error five.

## PREJUDGMENT INTEREST

In its sixth point of error, Keene argues that Alabama law would not award prejudgment interest. It contends that appellees' exposure to asbestos, if any, occurred in Alabama, and Alabama law should apply. Keene also maintains that it could not object to the prejudgment interest award until after judgment and the rules of civil procedure do not require it to object to prejudgment interest in its motion for new trial. *See* TEX.R.CIV.P. 324(b).

Keene relies on *Wilson v. Dunn,* 800 S.W.2d 833 (Tex.1990), to show that it could avoid rule 52(a) of the Texas Rules of Appellate Procedure and still preserve the error for appellate review. *See* TEX.R.APP.P. 52(a). In *Wilson,* the appellant objected to defective service. A complaint of defective service is a complaint to the court's jurisdiction. Jurisdictional errors require no predicate to preserve error on appeal. *See Wilson,* 800 S.W.2d at 836. Appellant does not challenge the trial court's jurisdiction.

Appellees contend that, when Keene did not object to prejudgment interest either before or after judgment, it waived any error. They argue that Keene could have filed special exceptions, requested a partial summary judgment, filed its own judgment, or objected to the judgment entered. *See* TEX.R.CIV.P. 90, 166a(b).

## Applicable Law

To preserve a complaint on prejudgment interest for appellate review, an appellant must inform the trial court of its complaint. *See Courtney v. City of Sherman*, 792 S.W.2d 135, 138–39 (Tex.App.—Dallas 1990, writ denied); *Larrumbide v. Doctors Health Facilities*, 734 S.W.2d 685, 693 (Tex.App.—Dallas 1987, writ denied). The rules require an appellant to complain to the trial court in a "timely" manner. Tex. R.App.P. 52(a). When appellant's complaint is about the judgment, "timely" includes any time in which the trial court retains plenary power to modify, correct, or reform the judgment. *See* Tex.R.Civ.P. 329b(g).

Rule 329b(g) governs postjudgment motions that, if granted, would result in a substantive change in the judgment. *Commonwealth Lloyd's Ins. Co. v. Thomas*, 825 S.W.2d 135, 141 (Tex.App.—Dallas 1991, writ requested) (op. on reh'g); *Brazos Elec. Power Coop., Inc. v. Callejo*, 734 S.W.2d 126, 128 (Tex.App.—Dallas 1987, no writ).

## Application of Law

 We agree with appellees. Keene could have timely objected to the court's including prejudgment interest in its judgment. Keene never brought the error, if any, to the trial court's attention under rule 52(a) or 329b(g).

 Additionally, Keene never requested the court to apply Alabama law, and the trial court never took judicial notice of Alabama law. *See* Tex.R.Civ.Evid. 202. Keene did not preserve the error that it now asserts on appeal.

We overrule Keene's sixth point of error.

## MEDIATION SANCTIONS

In its seventh and eighth points of error, Keene complains that the trial court erred in ordering mediation and imposing sanctions against Keene for not participating in the mediation proceeding.

## Pertinent Facts

On another defendant's motion, the court ordered all parties to participate in mediation beginning on the morning following the court's order. The order required that an executive officer from each corporate defendant, with authority to negotiate a settlement, attend the mediation. Keene explained to the court that its predetermined settlement policy permitted only the company's president to negotiate a settlement. Keene's president was in New York and could not be in Dallas on twenty-four hours' notice. The court maintained that someone with settlement power would have to attend.

The next morning, Keene requested the statutory ten days to file written objections to the court's referral order. The court overruled Keene's request and oral objection. Keene sent a representative without settlement authority to the mediation proceeding. After the representative restated Keene's position, the mediator excused Keene's representatives from further attendance.

Appellees moved for sanctions for Keene's not participating in the mediation. The court conducted a hearing on appellees' motion and ordered that Keene pay all costs of mediation.

## Applicable Law

The Texas Civil Practice and Remedies Code authorizes courts to refer a pending dispute to an alternative dispute resolution procedure at any point in the trial or appellate process. *Downey v. Gregory*, 757 S.W.2d 524, 525 (Tex.App.—Houston [1st Dist.] 1988, no writ); *see* Tex.Civ.Prac. & Rem.Code Ann. § 154.021 (Vernon Supp. 1992). The statute also provides a procedure for notice of and objection to the court's referral:

(a) If a court determines that a pending dispute is appropriate for referral under Section 154.021, the court shall notify the parties of its determination.

(b) Any party may, within 10 days after receiving the notice under Subsection (a), file a written objection to the referral.

(c) If the court finds that there is a reasonable basis for an objection filed under Subsection (b), the court may not refer the dispute under Section 154.021.

TEX.CIV.PRAC. & REM.CODE ANN. § 154.022 (Vernon Supp.1992).

### Application of Law

 Section 154.022 allows parties ten days to file objections once the trial court determines that alternative dispute resolution is appropriate. The trial court required Keene to participate in mediation on twenty-four hours' notice. Keene specifically requested ten days to file objections as provided in the statute.

The statute's stated intent is "to encourage the peaceable resolution of disputes ... and the early settlement of pending litigation through *voluntary* settlement procedures." TEX.CIV.PRAC. & REM.CODE ANN. § 154.002 (Vernon Supp.1992) (emphasis added). Keene requested, and the court denied, ten days to file written objections under the applicable statutory provision. This mediation proceeding was neither voluntary nor in accord with the required statutory procedures.

Although the trial court has an interest in expediting the resolution of pending litigation, it cannot force the parties to follow an unreasonable timetable. If the trial court can force a resisting party to participate in alternative dispute resolution without regard to the ten-day objection period, it renders a portion of the statute meaningless. While the trial court has discretion in determining whether alternative dispute resolution is appropriate,[7] it has no authority to ignore the statute's intent and wording.

We sustain points of error seven and eight.

### CONCLUSION

 We affirm the trial court's judgment. We vacate the trial court's March 4, 1991 order imposing sanctions on Keene for failure to comply with the mediation order. Because appellees moved for the invalid sanctions, we render judgment that appellees shall refund to Keene any monies it paid under the trial court's vacated order. Because the appellate relief given appellant is *de minimis* compared to appellees' overall award affirmed on appeal, we assess all costs of this appeal against appellant. *See* TEX.R.APP.P. 89; TEX.R.CIV.P. 139, 141.

---

7. *See* TEX.CIV.PRAC. & REM.CODE ANN. §§ 154.021(a), 154.022(c); *Downey,* 757 S.W.2d at 525.