NUMBER 13-03-058-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG
                                                                                                                      

BORG-WARNER CORPORATION, 
NOW KNOWN AS BURNS 
INTERNATIONAL SERVICES 
CORPORATION,                                                                         Appellant,

v.
 
ARTURO FLORES,                                                                     Appellee.
                                                                                                                                      

On appeal from the 319th District Court of Nueces County, Texas.
                                                                                                                      

O P I N I O N

Before Chief Justice Valdez and Justices Yañez and Garza 
Opinion by Justice Garza

          This is an asbestos case. Arturo Flores sued Borg-Warner for damages arising
from his use of brake pads manufactured by Borg-Warner that contained asbestos. The
jury found Borg-Warner liable for negligence and strict liability. It also found that Borg-Warner acted with malice and awarded $50,000 in punitive damages, in addition to
$103,200 in compensatory damages. Borg-Warner now appeals the judgment by nine
issues. For the reasons that follow, we affirm. 
I. Legal Sufficiency of Negligence Claim 
          In its first issue, Borg-Warner argues that the evidence is legally insufficient to prove
negligence.


 
A. Standard of Review
          When reviewing a legal-sufficiency point, we consider only the evidence and
inferences that tend to support a finding and disregard all evidence and inferences to the
contrary. N. Am. Refractory Co. v. Easter, 988 S.W.2d 904, 908 (Tex. App.—Corpus
Christi 1999, pet. denied). If there is any evidence of probative force to support the finding
(i.e., more than a mere scintilla), we will overrule the issue. Id. 
B. Analysis 
           According to Borg-Warner, there is no evidence that asbestos fibers were released
from its brake pads and, thus, no evidence that its brake pads injured Flores. A
fundamental principle of products liability law is that a plaintiff must prove that the
defendant supplied the product that caused his or her injury. Id. at 909. In the context of
asbestos-related claims, if there is sufficient evidence that the defendant supplied any of
the asbestos to which the plaintiff was exposed, then the plaintiff has met the burden of
proof. Id. 
          The following evidence supports the jury’s finding that Borg-Warner’s brake pads
injured Flores: (1) Flores was a mechanic from 1964 to 2001; (2) as a mechanic, Flores
ground new brake pads prior to installation, a process necessary to minimize “brake
squealing”; (3) the grinding process produced visible dust, which Flores inhaled; (4) from
1972 to 1975, Flores ground brake pads manufactured by Borg-Warner; (5) Borg-Warner’s
brake pads contained between seven and twenty-eight percent asbestos by weight; (6) in
1998, Flores was diagnosed with asbestosis; (7) Dr. Castleman testified that brake
mechanics can be exposed to asbestos by grinding brake pads, a process which produces
“respirable asbestos fibers”; (8) Dr. Bukowski testified that “brake dust has been shown to
. . . have asbestos fibers”; and (9) Dr. Bukowski also testified that “brake dust can cause
asbestosis.” 
          Borg-Warner maintains that the evidence is insufficient because the evidence does
not prove that its brake pads actually produced “respirable asbestos fibers.” It compares
the instant case to two decisions of this Court that involved asbestos claims. See id. at
911; Celotex Corp. v. Tate, 797 S.W.2d 197, 203 (Tex. App.—Corpus Christi 1990, writ
dism’d). We disagree that our prior precedent compels reversal of the judgment in the
present case. 
          In Easter, the first case cited by Borg-Warner, this Court considered whether the
evidence adduced at trial was legally and factually sufficient to prove causation. Easter,
988 S.W.2d at 908. The plaintiffs presented evidence that the defendant’s products
contained asbestos. See id. at 909–10. In addition, the plaintiffs offered evidence that the
defendant’s products emitted dust containing respirable asbestos fibers, which one of the
plaintiffs had inhaled. See id. at 911. On appeal, this Court held that the evidence was
sufficient to prove the defendant’s products injured both plaintiffs. See id. at 911. 
          According to Borg-Warner, the precedent set by this Court in Easter requires that
all asbestos plaintiffs prove the emission of respirable asbestos fibers in order to establish
causation. We do not interpret Easter as imposing any such requirement. Easter relied
heavily on “direct eyewitness testimony that both . . . [plaintiffs] worked in the presence of
the asbestos-containing product or breathed dust from the product.” Id. at 910. According
to the Court, such “evidence was legally and factually sufficient to demonstrate that . . . [the
plaintiffs] were exposed to dust from [the defendant’s] asbestos-containing products.” Id. 
Although the Easter opinion specifically mentioned respirable asbestos fibers, the Court
did not suggest that the evidence would have been insufficient without such testimony. 
See id. at 911. To the contrary, the Court stated that “work[ing] in the presence of the
asbestos-containing product” was “direct evidence” of causation and sufficient to uphold
the jury’s finding. Id. at 909. 
          In Tate, the second case cited by Borg-Warner, there was no evidence that
respirable asbestos fibers were released from the defendant’s product. See Tate, 797
S.W.2d at 203. Rather, the evidence established that the plaintiff had been exposed to
and inhaled raw asbestos, which caused him to develop mesothelioma. See id. On
appeal, this Court held that the evidence was sufficient to prove causation. Id. 
          Borg-Warner relies on Tate to create a distinction between exposure to raw
asbestos and exposure to a product containing asbestos. According to Borg-Warner, the
plaintiff in this case was required to prove the emission of respirable asbestos fibers
because he was only exposed to a product containing asbestos and not to raw asbestos. 
We find no support for this distinction in the case law cited by Borg-Warner.


 
          Furthermore, even if we were to conclude that the emission of respirable asbestos
fibers is necessary to prove causation, see In re ROC Pretrial, 131 S.W.3d 129, 136 (Tex.
App.—San Antonio 2004, no pet.), the standard of review for legal sufficiency challenges
would render Borg-Warner’s complaint moot. We consider only the evidence that supports
the verdict, see Easter, 988 S.W.2d at 908, and the evidence is viewed in a light that tends
to support the disputed fact. Weirich v. Weirich, 833 S.W.2d 942, 945 (Tex. 1992). In this
case, there is evidence that (1) the plaintiff inhaled dust created by a Borg-Warner product
that contained asbestos, (2) when ground for fitting, brake pads containing asbestos can
produce respirable asbestos fibers that can cause asbestosis, and (3) the plaintiff suffers
from asbestosis. This is more than a scintilla of evidence on causation. Borg-Warner’s
first issue is overruled. 
II. Legal Sufficiency of Strict Liability Claim 
          In its second issue, Borg-Warner argues that the jury’s finding of strict liability is not
supported by legally sufficient evidence. To recover compensatory damages, Flores was
required to establish only one cause of action.


 We have already upheld the jury’s finding
of negligence, and therefore, we need not decide whether the evidence was legally
sufficient to establish strict liability. See Tex. R. App. P. 47.1 (requiring opinions of court
to be “as brief as practicable” and decide only the “issue[s] raised and necessary to final
disposition of the case”). Borg-Warner’s second issue is overruled.      
III. Legal Sufficiency of Malice Finding 
          In its third issue, Borg-Warner argues that the evidence is legally insufficient to
support the jury’s finding that it acted with malice. 
          Malice is defined as

(A) a specific intent by the defendant to cause substantial injury to the
claimant; or
(B) an act or omission:
(i) which when viewed objectively from the standpoint of the actor at
the time of its occurrence involves an extreme degree of risk,
considering the probability and magnitude of the potential harm to
others; and
(ii) of which the actor has actual, subjective awareness of the risk
involved, but nevertheless proceeds with conscious indifference to the
rights, safety, or welfare of others.

Tex. Civ. Prac. & Rem. Code Ann. § 41.001(7) (Vernon Supp. 2003).


 In 1995, the
legislature substituted malice for gross negligence as the prerequisite for punitive
damages, but it also redefined malice, through the addition of subsection (B), to mirror the
definition of gross negligence articulated by the Texas Supreme Court in Transportation
Insurance Company v. Moriel, 879 S.W.2d 10, 23 (Tex. 1994). Mobil Oil Corp. v. Ellender,
968 S.W.2d 917, 921 n.2 (Tex. 1998). Consequently, prior precedent regarding gross
negligence is relevant to legal sufficiency of malice as redefined by section 41.001(7)(B). 
See Ellender, 968 S.W.2d at 921 n.2.  
          Gross negligence includes two elements: (1) viewed objectively from the actor’s
standpoint, the act or omission must involve an extreme degree of risk, considering the
probability and magnitude of the potential harm to others; and (2) the actor must have
actual, subjective awareness of the risk involved but nevertheless proceed in conscious
indifference to the rights, safety, or welfare of others. Id. at 921. Evidence of simple
negligence is not enough to prove either the objective or subjective elements of gross
negligence. Id. Under the first element, “extreme risk” is not a remote possibility of injury
or even a high probability of minor harm; it is the likelihood of serious injury to the plaintiff. 
Id. Under the second element, actual awareness means that the defendant knew about
the peril, but its acts or omissions demonstrated that it did not care. Id. Circumstantial
evidence is sufficient to prove either element of gross negligence. Id. A. Malice - Objective Element 
          Borg-Warner argues that there was no evidence or legally insufficient evidence to
show that use of its brake pads posed an extreme risk of harm. We disagree. Even
according to Borg-Warner’s version of the record, medical and scientific literature dating
as far back as 1898 published in the United States, Great Britain, and Germany
documented the dangers of asbestos dust. According to Dr. Castleman, between 1950
and 1968, hundreds of articles were published on the health hazards of asbestos. These
articles emphasized the extraordinary dangers faced by employees, including brake
mechanics, who worked with asbestos materials. According to Dr. Castleman, by 1968,
it was “definitely” confirmed that exposure to asbestos can cause asbestosis, as well as
other diseases. This evidence is legally sufficient to establish the objective element of
malice (i.e., likelihood of serious injury). 
 
B. Malice - Subjective Element 
          Borg-Warner argues that even if the evidence is legally sufficient to prove the
objective element of malice, there is no evidence that between 1972 and 1975 it had actual
knowledge that use of its asbestos-containing products created an extreme risk of injury
to automotive mechanics. In response, Flores argues that the dangers of asbestos have
been common knowledge since at least the 1930s and that, as a manufacturer of asbestos
products, Borg-Warner is assumed to have had such knowledge. See Borel v. Fibreboard
Paper Prods. Corp., 493 F.2d 1076, 1089 (5th Cir. 1973, writ denied) (“[T]he manufacturer
is held to the knowledge and skill of an expert.”). We agree. As a manufacturer of
asbestos products, Borg-Warner should be held to the knowledge and skill of an asbestos
expert. See id.
          In this case, the jury was presented with scientific and medical knowledge spanning
over a century that documented the likelihood of serious injury to workers exposed to
asbestos, especially asbestos dust. Nevertheless, Borg-Warner manufactured disk brake
pads that had to be ground before use, a process which produced dust containing
asbestos. No warning labels were placed on the product’s packaging, and as a result,
users of the product, including Flores, were not cautioned to take precautionary measures
to avoid exposure to the asbestos. 
          Even assuming arguendo that this evidence were insufficient, Borg-Warner’s failure
to invest in research promoting health and safety would suffice to establish the subjective
component of malice. See Louisiana-Pa. Corp. v. Andrade, 19 S.W.3d 245, 247 (Tex.
1999) (“Corporate safety policies, or the lack of them, can serve as the basis for a gross
negligence finding.”). Despite the widely-known danger of asbestos products, Borg-Warner
“had a research facility for product development, testing, and research from 1956 to 1988
with a ten million dollar per year budget, and [yet] . . . no percentage of gross sales were
spent on research regarding asbestos and the health effects of asbestos.”
          Given this evidence, we conclude that the jury’s finding of malice was supported by
more than a scintilla of evidence. Borg-Warner’s third issue is overruled.
IV. Motion for Directed Verdict
          In its fourth issue, Borg-Warner contends that the trial court erred by failing to grant
its motion for directed verdict. A court may instruct a verdict if no evidence of probative
force raises a fact issue on the material questions in the suit. Prudential Ins. Co. of Am.
v. Fin. Review Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000). A directed verdict for a
defendant may be proper in two situations. First, a court may direct a verdict when a
plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of
recovery. Id. Second, a trial court may direct a verdict for the defendant if the plaintiff
admits or the evidence conclusively establishes a defense to the plaintiff’s cause of action. 
Id. 
          We have already concluded that there is more than a scintilla of evidence
supporting the jury’s finding of negligence and malice. Borg-Warner was not entitled to a
directed verdict. See id. Its fourth issue is overruled. 
V. Motion for JNOV
          In its fifth issue, Borg-Warner argues that the trial court erred in denying its motion
for a judgment notwithstanding the verdict. A court may grant a motion for judgment
notwithstanding the verdict if a directed verdict would have been proper. Tex. R. Civ. P.
301; Ft. Bend County Drainage Dist. v. Sbrusch, 818 S.W.2d 392, 394 (Tex. 1991). 
Because Borg-Warner was not entitled to a directed verdict, the trial court did not err in
denying its motion for JNOV. See Tex. R. Civ. P. 301; Sbrusch, 818 S.W.2d at 394. Its
fifth issue is overruled. 
VI. Motion for New Trial
          In its sixth issue, Borg-Warner argues that the trial court erred in denying its motion
for new trial because there was no evidence or legally and factually insufficient evidence
to support the jury’s findings regarding comparative responsibility and damages. A trial
court’s denial of a motion for new trial is reviewed for abuse of discretion. See Pharo v.
Chambers County, 922 S.W.2d 945, 947 (Tex. 1996). As a preliminary matter, we note
that Borg-Warner has failed to provide this Court with any statement of the law regarding
factual sufficiency challenges and has thus failed to preserve any error regarding factual
sufficiency. Tex. R. App. P. 38.1(h) (“The brief must contain a clear and concise argument
for the contentions made, with appropriate citations to authorities and to the record.”); In
re A.J.G., 131 S.W.3d 687, 691 (Tex. App.—Corpus Christi 2004, pet. denied). We
therefore decide this issue only as it relates to the legal sufficiency of the evidence.
A. Comparative Responsibility
          Borg-Warner argues that the jury erred in assessing its responsibility at 37%
because the evidence established that it was only between 4.5 and 6.25% responsible. 
Although mathematical calculations are provided in support of this contention, citations to
the record and to relevant case law are entirely lacking in Borg-Warner’s brief. See Tex.
R. App. P. 38.1(h). Even assuming arguendo that this issue has been preserved, Borg-Warner has given us no basis for concluding that the trial court abused its discretion in
denying a new trial. See Pharo, 922 S.W.2d at 947. 
B. Damages
          Borg-Warner also argues that a new trial should have been granted because the
damages awarded by the jury were excessive. As the Texas Supreme Court has
explained, the standard of review for an excessive damages complaint is factual sufficiency
of the evidence. Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 406 (Tex. 1998). 
Borg-Warner has failed to provide a statement of the law regarding factual sufficiency and
the law regarding excessive damages.


 It has preserved nothing for this Court to review.


 
Tex. R. App. P. 38.1(h). Borg-Warner’s sixth issue is overruled. 
VII. Admission of Evidence 
          In its seventh issue, Borg-Warner argues that the trial court erred by admitting
certain evidence into the record, including Plaintiff’s Exhibit 1 and certain testimony by Dr.
Castleman.
A. Standard of Review 
          The admission or exclusion of evidence is a matter within the trial court’s sound
discretion. Easter, 988 S.W.2d at 914. A trial court abuses its discretion when it rules
without regard for any guiding rules or principles. Id. An appellate court must uphold the
trial court’s evidentiary ruling if there is any legitimate basis for the ruling. Id. To obtain
reversal of a judgment based on error in the admission or exclusion of evidence, an
appellant must show that the trial court’s ruling was in error and that the error probably
caused the rendition of an improper judgment. Tex. R. App. P. 44.1(a); Easter, 988 S.W.2d
at 914. When the issue is exclusion of evidence, the reviewing court must review the entire
record to determine if error occurred. Easter, 988 S.W.2d at 914. 
B. Plaintiff’s Exhibit 1
          Borg-Warner contends that Plaintiff’s Exhibit 1, a book authored by Dr. Castleman,
was hearsay and should not have been admitted into evidence.


 At trial, Flores offered
chapter eight of Dr. Castleman’s book into evidence, and Borg-Warner objected on the
grounds that the book was hearsay and that a proper foundation had not been established
for its admission. On appeal, Borg-Warner maintains that the trial court erred by admitting
the book into evidence for the following reasons: (1) the book amounts to hearsay, see
Tex. R. Evid. 802; (2) it does not fall under the learned-treatise exception to the hearsay
rule, see Tex. R. Evid. 803(18); and (3) even if it does fall under the exception, the trial
court had no discretion to admit the book into evidence, as rule 803(18) only allows such
works to be read into the record, not be received as exhibits. See id. 
          Although Borg-Warner has argued persuasively that the trial court erred in admitting
Dr. Castleman’s book into evidence, it has failed to demonstrate that any such “error
probably caused the rendition of an improper judgment.” Tex. R. App. P. 44.1(a). In fact,
our independent review of the record shows the opposite. Dr. Castleman testified
extensively regarding the contents of his book, in particular chapter eight, and Borg-Warner
was given the opportunity to cross-examine him. Thus, even if chapter eight were
improperly admitted into evidence, we would be unable to conclude that such an “error
probably caused the rendition of an improper judgment.” Id.; see also Houston Lighting
& Power Co. v. Klein Indep. Sch. Dist., 739 S.W.2d 508, 519 (Tex. App.—Houston [14th
Dist.] 1987, writ denied) (holding that even if trial court erred in admitting into evidence
exhibits containing studies because they were hearsay, error was harmless because
experts discussed studies in detail during their trial testimony). 
C. Dr. Castleman’s Testimony 
          Next, Borg-Warner argues that the trial court erred by allowing Dr. Castleman to give
opinion testimony on the “absence and/or adequacy of warning labels on asbestos-containing products.” At trial, Borg-Warner’s counsel acknowledged to the trial court that
Dr. Castleman

was designated to testify about the medical and scientific literature, the
availability of materials as a substitute [for asbestos], exposure levels of
asbestos, review of documents entered into evidence in this case[,] . . . his
conclusions regarding Defendant’s [sic] negligence, strict liability, . . . [and
whether] Defendants conspired to suppress information . . . .
       
Although counsel for Borg-Warner objected to Dr. Castleman’s testimony because “[h]e
is not qualified by training or education to testify about warning labels,” counsel
subsequently conceded that she “certainly” could not dispute “the rest of his expertise.” 
In doing so, she waived any error regarding Dr. Castleman’s expertise except as to warning
labels. See Tex. R. App. P. 33.1(a). 
          As an asbestos expert, Dr. Castleman was entitled to state his opinion on mixed
questions of law and fact, including whether Borg-Warner was negligent, grossly negligent
(i.e., acted with malice), or strictly liable. See Tex. R. Evid. 704; Birchfield v. Texarkana
Mem’l Hosp., 747 S.W.2d 361, 365 (Tex. 1987) (“Fairness and efficiency dictate that an
expert may state an opinion on a mixed question of law and fact as long as the opinion is
confined to the relevant issues and is based on proper legal concepts.”). Under Texas law,
strict liability can be predicated on one of three different theories: (1) manufacturing
defects; (2) design defects; and (3) marketing defects (i.e., inadequate warnings). Keene
Corp. v. Gardner, 837 S.W.2d 224, 228 (Tex. App.—Dallas 1992, writ denied). Thus, Dr.
Castleman was entitled to state his opinions regarding manufacturing, design, and
marketing defects of Borg-Warner’s products, including the inadequacy of any warnings. 
See Tex. R. Evid. 704; Birchfield, 747 S.W.2d at 365; Gardner, 837 S.W.2d at 228. 
          In overruling this issue, we note that Borg-Warner never placed any warnings on its
brake pads. Dr. Castleman’s testimony regarding the “absence and/or adequacy of
warning labels on asbestos-containing products” was essentially that “no warning
whatsoever” would not “be an adequate warning of the dangers and hazards associated
with working with . . . [Borg-Warner’s] product, [including] grinding and milling.” Given
these considerations, even if an error had occurred, we would be unable to conclude that
it “probably caused the rendition of an improper judgment.” Tex. R. App. P. 44.1(a); see
also Schlafly v. Schlafly, 33 S.W.3d 863, 870 (Tex. App.—Houston [14th Dist.] 2000, pet.
denied) (“To find reversible error, we must conclude that the whole case turns on the
error.”). Borg-Warner’s seventh issue is overruled. 
VIII. Exclusion of Settled Defendants from Jury Charge
          In its eighth issue, Borg-Warner argues that the trial court erred by excluding from
the jury questions on apportioned responsibility certain parties that had settled with Flores. 
The statute that controls this issue, section 33.003 of the Texas Civil Practice and
Remedies Code, reads as follows:
 
(a) The trier of fact, as to each cause of action asserted, shall determine the
percentage of responsibility, stated in whole numbers, for the following
persons with respect to each person’s causing or contributing to cause in any
way the harm for which recovery of damages is sought, whether by negligent
act or omission, by any defective or unreasonably dangerous product, by
other conduct or activity that violates an applicable legal standard, or by any
combination of these:
          (1) each claimant;
          (2) each defendant;
          (3) each settling person; and
(4) each responsible third party who has been joined under Section
33.004.

Tex. Civ. Prac. & Rem. Code Ann. § 33.003 (Vernon 1997).


 As the Houston court has
explained, “[S]ection 33.003 only requires submission of a question on the comparative
responsibility of a settling defendant if there are pleadings alleging, and evidence
supporting, liability on the part of the settling defendant.” Kroger Co. v. Betancourt, 996
S.W.2d 353, 358 (Tex. App.—Houston [14th Dist.] 1999, pet. denied); see also Rehab.
Facility v. Cooper, 962 S.W.2d 151, 154 (Tex. App.—Austin 1998, no pet.) (“The legislature
apparently did not intend to require juries to assess responsibility when none was alleged
or proven.”). 
          Borg-Warner’s brief does not identify specific evidence supporting the liability of the
settling parties. See Tex. R. App. P. 38.1(h) (requiring “appropriate citations to authorities
and to the record”). Thus, we cannot conclude that the trial court erred by excluding them
from the jury charge. See Tex. R. Civ. P. 278 (“The court shall submit the questions,
instructions, and definitions . . . , which are raised by the written pleadings and the
evidence.”). Borg-Warner’s eighth issue is overruled. 
 
IX. Motion to Compel Settlement Information
          In its ninth issue, Borg-Warner contends that the trial court erred by denying its
motion to compel settlement information for the purpose of obtaining a settlement credit. 
Before trial, Borg-Warner elected dollar-for-dollar settlement credit under chapter 33 of the
remedies code. Tex. Civ. Prac. & Rem. Code Ann. § 33.014 (Vernon 1997).


 It therefore
had the burden of proving its right to such a credit. See Ellender, 968 S.W.2d at 927. This
burden includes proving the settlement credit amount, which can be accomplished by
placing the settlement agreement or some other evidence of the settlement amount in the
record. Id. Borg-Warner complains that it could not establish the amount of its settlement
credit without evidence of the actual settlement agreements executed by Flores with other
parties.
          Counsel for Flores provided Borg-Warner with a letter dated May 31, 2002, stating
that the total settlement amount received by Flores was $40,125. This letter was admitted
into evidence. Subsequently, on August 7, 2002, counsel for Flores submitted a second
letter into evidence that stated the aggregate settlement amount as $42,125. Borg-Warner
argues that these letters are insufficient to establish the total amount of settlement credit
to which it is entitled because the aggregate settlement amount cannot be verified without
the actual settlement agreements. We disagree. Under Ellender, the settlement credit
amount can be established by the actual “settlement agreement or some other evidence
of the settlement amount.” Id. (emphasis added). There is no requirement that the actual
settlement agreement be submitted into evidence in order to establish the settlement credit
amount. See id. 
          The essence of Borg-Warner’s complaint is that it could not verify the total
settlement amount obtained by Flores and that it was therefore entitled to post-verdict
discovery. Counsel for Flores objected to Borg-Warner’s request to produce the actual
settlement agreements because the agreements were confidential; however, counsel for
Flores provided the trial court with a list of parties with whom Flores had settled and the
respective settlement amounts. The trial court reviewed this information in camera, along
with portions of the settlement agreements, and ultimately found that the settlement credit
amount of $42,125 was accurate. The documents reviewed by the trial court were sealed,
and Borg-Warner’s designation of materials to be included in the clerk’s record did not list
them. Consequently, we have no means of reviewing the trial court’s decision to deny
discovery of the settlement agreements based on confidentiality or the effect of any such
error. See In re Frank A. Smith Sales, Inc., 32 S.W.3d 871, 875 (Tex. App.—Corpus
Christi 2000, orig. proceeding) (explaining that “when the trial court disallows discovery and
the missing discovery cannot be made part of the appellate record . . . a reviewing court
is unable to evaluate the effect of the trial court’s alleged error on the record before it”). 
Borg-Warner’s ninth issue is therefore overruled.
X. Conclusions
          For the aforementioned reasons, Borg-Warner’s issues on appeal are overruled and
the judgment of the trial court is affirmed.
 
                                                                               _______________________
                                                                               DORI CONTRERAS GARZA,
                                                                               Justice
 
 
Opinion delivered and filed 
this the 16th day of December, 2004.